VERGOTE v K MART CORPORATION (AFTER REMAND)

Docket No. 91003. Submitted December 10, 1986, at Lansing. Decided February 18, 1987.

Leo Vergote and Elizabeth Vergote brought an action in the Oakland Circuit Court against K mart Corporation. Plaintiffs alleged that defendant was in breach of a purchase agreement involving a twenty-three acre tract of a 101-acre parcel owned by plaintiffs. Plaintiffs contended that defendant had bound itself under the terms of the agreement to dedicate portions of the tract to Macomb County for use as public roads, but that when Macomb County required the paving of the roads in question before accepting their dedication, K mart declined to bear the $92,000 cost of such improvement, thus resulting in plaintiffs' action for damages and for specific performance. The trial court, James S. Thorburn, J., granted summary judgment in favor of defendant, ruling that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law. Plaintiffs appealed. The Court of Appeals reversed the trial court's ruling and remanded the case for trial, holding that the trial court had erred in granting defendant's motion since a genuine issue of fact existed as to whether the parties' purchase agreement was a complete and accurate expression of their agreement, and, thus, had erred in applying the parol evidence rule to bar extrinsic evidence of the parties' prior oral agreement. 125 Mich App 48 (1983). On remand, the trial court, pursuant to court rule and a stipulation by the parties that the case be decided based on the pleadings, exhibits, depositions and briefs in lieu of a trial, found that defendant's failure to achieve the dedication of the roads was a breach of contract, unless excused. The trial court rejected a defense of impossibility, noting that defendant knew

REFERENCES

Am Jur 2d, Contracts §§ 1-3, 18 et seq.; 77, 321, 322, 362, 404 et seq.
Am Jur 2d, Equity § 266.
Comment Note.—The parol evidence rule and admissibility of extrinsic evidence to establish or clarify ambiguity in written contract. 40 ALR3d 1384.
Modern status of the rules regarding impossibility of performance as defense in action for breach of contract. 84 ALR2d 12.

that acceptance by Macomb County was required to effect the dedication yet made no effort to determine the county's requirements. Defendant appealed.

The Court of Appeals *held:*

1. Since this case was decided by the trial court upon a record stipulated to by the parties and consisting solely of the pleadings, exhibits, depositions and briefs, and the trial court neither heard nor saw any witnesses in open court, the Court of Appeals is not bound by the "clearly erroneous" standard of review, but may make an independent evaluation of the sufficiency of the evidence in reviewing the trial court's findings of fact.

2. On the basis of a review under the standard discussed above, the Court of Appeals concluded that the trial court did not err in its findings of fact. Nothing in the language of the purchase agreement, as finally amended, suggested that acceptance of the roads by the county was a condition precedent to defendant's duty to perform by dedicating the roads. Therefore, the trial court did not err in finding that defendant's duty to perform was not conditioned on the performance of any third party and that defendant's failure to perform was unexcused.

3. The trial court's admission of evidence of a statement attributed to an agent of defendant and which indicated that defendant would do whatever was necessary to get the road dedicated was not in violation of the parol evidence rule, since evidence of the statement did not vary the agreement between the parties which obligated defendant to secure the dedication of the road. Implicit in defendant's duty to secure dedication was a duty to do whatever was necessary.

4. A party, such as defendant, who enters into a contract to render a performance for which government approval is required assumes the duty of obtaining such approval and bears the risks attendant to a refusal by the government. Thus, a defense of impossibility was unavailing for defendant's nonperformance and defendant must bear the cost of road paving under the terms of the parties' agreement.

Affirmed.

1. EQUITY — APPEAL.

The Court of Appeals may make an independent evaluation of the sufficiency of evidence when reviewing a trial court's findings of fact in an action in equity decided by the trial court on a record stipulated to by the parties and consisting solely of pleadings, exhibits, depositions and briefs, and where the trial court neither heard nor saw any witnesses in open court (MCR 2.517).

2. Contracts — Conditions Precedent — Judicial Construction.

Stipulations of a contract are not usually construed as conditions precedent unless the court is compelled to do so by the language of the contract plainly expressed.

3. Contracts — Parol Evidence — Contract Negotiations — Prior Agreements.

Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous.

4. Contracts — Parol Evidence — Intention of Parties.

Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible where it bears on the threshold question of whether the parties to a contract intended the writing to be a complete expression of their agreement.

5. Contracts — Impossibility of Performance — Foreseeability.

The question of whether a promisor's liability is extinguished in the event his contractual promise becomes objectively impossible of performance may depend upon whether the supervening event producing impossibility was or was not reasonably foreseeable when he entered into the contract.

6. Contracts — Impossibility of Performance — Performance Requiring Governmental Approval.

A party who enters into a contract to render a performance for which government approval is required assumes the duty of obtaining such approval and bears the risks attendant to a refusal by the government; such party therefore may not avail itself of the defense of impossibility of performance where the government withholds approval.

*Richard A. Smith,* for plaintiffs.

*Faintuck, Schwedel & Wolfram* (by *William G. Wolfram*), for defendant.

### AFTER REMAND

Before: MacKenzie, P.J., and Allen and M. J. Shamo,* JJ.

---

\* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Allen, J. This action for damages and specific performance arising from defendant's breach of contract to purchase twenty-three acres of a 101-acre parcel of land owned by plaintiffs in Macomb County returns to us pursuant to *Vergote v K mart,* 125 Mich App 48; 336 NW2d 229 (1983), lv den 417 Mich 1100.39 (1983). That opinion held that evidence of oral statements was admissible to determine the threshold question of whether paragraph 10 of the original contract to purchase, as amended following a closing meeting February 1, 1978, was or was not a complete and accurate expression of the agreement reached between the parties. The grant of summary judgment for defendant was revised and the matter was remanded for trial at which the parties' prior oral statements would be admissible.

On remand to the trial court, the parties stipulated that in lieu of presenting proofs in open court the case would be decided upon the pleadings, exhibits, depositions, and briefs as authorized under MCR 2.517. The matter was so decided by the trial court which, in a written opinion issued October 21, 1985, held that defendant had breached the contract to purchase twenty-three acres of plaintiffs' lands. Defendant appeals as a matter of right. Three claims of error are raised, the first being an issue of first impression. We affirm.

The central issue on remand and on appeal to us is the intent of the parties as expressed in the February 1, 1978, amendment to paragraph 10 of the original purchase agreement.[1] As initially written, paragraph 10 read:

---

[1] For a full statement of the facts and issues, see *Vergote v K mart, supra.*

10. The Purchaser agrees that the road indicated on the attached site plan and indicated as Exhibit A, shall be constructed by the Purchaser, at Purchaser's expense, and said road shall be constructed in accordance with the Macomb County Road Commission requirements for commercial and industrial use and shall contain sanitary storm sewers and municipal water and said road and other improvements shall be constructed from 23 Mile Road to the point marked Point A or as subsequently indicated on the survey. The road to be constructed shall be dedicated to public use.

After negotiations at the February 1, 1978, closing meeting, closing paragraph 10 was amended to read:

2. Paragraph 10 of the Offer is amended to provide for improvement of the Land with roads and related rights-of-way as outlined in red on the attached Exhibit "B". The portion of the access road shown on Exhibit "B" and related rights-of-way which is not marked in "Red" shall be purchased by Purchaser and dedicated as a road and right-of-way; provided, however, that Purchaser shall not be required to improve the area so dedicated as presently required by Paragraph 10. Seller shall be entitled and shall have the right to improve the dedicated area with a road and other improvements, and connect to the roads to be installed by Purchaser, if he so elects. The dedication of the improved roads as well as the dedication of the Land which is not required to be improved shall occur upon the completion of the roads and the written notice from Seller that he desires the roads to be dedicated. Purchaser shall be required to dedicate the roads in the condition "as is" and shall not be required to change the roads, utilities and/or other improvements installed by Purchaser.

On remand to the trial court, defendant argued

that the purpose of the February 1, 1978, amendment was to relieve K mart from the obligation of paving the in-between road but at the same time guaranteeing the seller that all of the roads including the in-between roads, would be dedicated. When Macomb County refused to accept dedication of all of the road without the in-between roads also being paved, K mart refused to spend the estimated $92,000 necessary to pave the in-between roads and thus assure dedication.

Plaintiff Leo Vergote argued that in the negotiations leading to the February 1, 1978, amendment, he insisted that dedication of the entire loop road was imperative since it would provide plaintiffs frontage for the acreage not sold to K mart. Vergote stated that he so informed James Schmidt, purchaser's agent, and further told Schmidt that he did not believe Macomb County would accept the entire ring road for dedication without the in-between roads being paved, and that Schmidt then assured plaintiffs that K mart would do "whatever was necessary" to assure dedication of the entire ring road. When K mart refused to go ahead with the deal, Vergote and his wife filed the instant suit for breach of contract.

After reviewing the pleadings, exhibits, depositions and briefs as stipulated by the parties, the trial court issued a written opinion October 21, 1985, holding in plaintiffs' favor. The court found that the amended purchase agreement bound defendant to improve the property by constructing the two side arms of the original loop road. Although defendant was no longer required to improve the in-between road of the loop road, the amended purchase agreement expressly required defendant to purchase and dedicate the connecting road as a road and right of way. Dedication of both the improved and unimproved portions of the road

would occur upon completion of the roads and written notice from plaintiffs. The court found that defendant was required to dedicate the roads "as is," viz.: without changing the improvements or utilities that defendant had installed.

The court further found that defendant did not make any inquiries into Macomb County's requirements for acceptance of lands involved for public use. The court noted that paragraph 9 of the purchase agreement provided both the time and opportunity to do so. The court noted that plaintiff had told defendant that his experience with Macomb County led him to believe that they would not accept the dead-end roads for dedication. The court found that defendant did not attempt to look into the accuracy or inaccuracy of plaintiff's statement. The court found that defendant agreed to dedicate the whole road. The court found that defendant's efforts to have the entire road dedicated were not successful since Macomb County would not accept the entire road for public use without the side roads being connected.

The court found that although the amendment negotiated relieved defendant of the obligation to improve the link connecting the two side roads, it also continued defendant's obligation to dedicate the entire road and right-of-way. The court found that defendant's failure to achieve dedication was a breach of contract unless excused. The court rejected defendant's defense of impossibility, stating that defendant knew that acceptance was required to effect the dedication but made no effort to determine the requirements of Macomb County.

The court found that the phrase "acceptance as is" was not a condition precedent to defendant's duty to dedicate the road. The court found that there was no term in the amendment which relieved defendant of its duty to dedicate the road if

the county found the road to be unacceptable. The court noted that the testimony of Schmidt indicated that the phrase "acceptance as is" referred to improvements and utilities which defendant had installed. The court noted that this phrase was included to assure that defendant would not have to incur additional costs due to subsequent changes in dedication standards respecting the roads on which defendant installed utility uses. From these findings and conclusions of law, defendant appeals raising three issues.

I

THE APPLICABLE STANDARD OF REVIEW

The parties disagree upon the applicable standard of review to be employed by this Court. Not surprisingly, plaintiffs claim that the appropriate standard of appellate review is the "clearly erroneous" standard. The instant action is a suit in equity. A trial court's decision in an equity action will not be reversed unless the findings are clearly erroneous or that the reviewing court is convinced that it would have reached a different result had it occupied the position of the trial court. *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church in the United States of America,* 148 Mich App 105; 384 NW2d 92 (1986), lv den 425 Mich 863 (1986). Equity actions are reviewed de novo, examining the entire record, weighing all the evidence and subjecting the trial court's findings to closer scrutiny than would be employed in the review of a jury verdict. Considerable weight is accorded in such cases to the lower court's findings of fact in light of its special opportunity to hear the evidence presented and to see the witnesses before it. *In re Conant Estate,* 130 Mich App 493; 343 NW2d 593 (1983).

In response, defendant contends that where, as here, a case is heard upon a stipulated record and the court does not see and hear the witnesses and the evidence consists mainly of deposition testimony, the reviewing court may make an independent evaluation of the sufficiency of the evidence. In such instances, the "clearly erroneous" standard is not applicable. The issue raised is of first impression in Michigan.

Other jurisdictions confronted with appellate review of a trial court's findings of fact upon a settled record in equity cases have rejected the "clearly erroneous" test. In *Orvis v Higgins,* 180 F2d 537 (CA 2, 1950), cert den 340 US 810; 71 S Ct 37; 95 L Ed 595 (1950), the United States Court of Appeals for the Second Circuit held that, if a trial judge decided a fact issue on written evidence alone, the Court of Appeals would be as able as the trial court to determine the credibility of the witnesses and, hence, could disregard the findings of the trial court. The court also said that, where evidence was partially oral and the balance was written or dealt with undisputed facts, an appeals court could ignore the trial court's findings of fact and substitute its own if the written evidence or some undisputed fact rendered credibility of the oral testimony to be extremely doubtful or if the trial court's findings rested exclusively on the written evidence or undisputed facts, so that its evaluation of credibility had no significance.

In *Best Medium Publishing Co, Inc v The National Insider, Inc,* 385 F2d 384 (CA 7, 1967), the Seventh Circuit made a similar ruling when it held that where the only testimony was by deposition the findings of a trial court were not as binding as where the court had an opportunity to observe the demeanor of the witnesses. This ruling was echoed in an Illinois case, where the Illinois

appellate court also held that, where the evidence before a trial court consisted entirely of deposition testimony, the appellate court was not bound by the trial court's findings of fact and could make an independent evaluation of the sufficiency of the evidence. *Carlson v Carlson,* 74 Ill App 3d 673; 393 NE2d 643 (1979).

The Minnesota Supreme Court has similarly ruled that, where the critical evidence is documentary, there is no necessity for a reviewing court to defer to the trial court's assessment of the meaning and credibility of the evidence. The Minnesota Supreme Court stated that the rule of appellate review varies with the character of evidence. If the fact issue is dedicated on written evidence alone, the appellate court may determine credibility and disregard the trial court's finding. Where the evidence is partially oral and partially written, the reviewing court may ignore the trial court's findings of fact and substitute its own if (1) the written evidence or some undisputed fact renders credibility of the oral testimony doubtful or (2) the trial court's findings rest exclusively on the written evidence, so that evaluation of credibility has no significance. *In re Trust Known As Great Northern Iron Ore Properties,* 243 NW2d 302 (Minn, 1976), cert den 429 US 1001; 97 S Ct 530; 50 L Ed 2d 612 (1976). Also holding to the same effect, see *Lake v Hermes Associates,* 552 P2d 126 (Utah, 1976); *In re Thompsons' Estate,* 226 Kan 437; 601 P2d 1105 (1979); *Matthews v R T Allen & Sons, Inc,* 266 A2d 240 (Me, 1970); *D & M Development Co, Inc v Sherwood & Roberts, Inc,* 93 Idaho 200; 457 P2d 439 (1969); *Leavy, Taber, Schultz & Bergdahl v Metropolitan Life Ins Co,* 20 Wash App 503; 581 P2d 167 (1978); *Bush v Putty,* 566 SW2d 819 (Ky App, 1978); *Allstate Ins Co v Carr,* 119 NH 851; 409 A2d 782 (1979); *Robinson v Nevada Immi-*

*gration District,* 101 Cal App 3d 760; 161 Cal Rptr 863 (1980); 5 Am Jur 2d, Appeal and Error, § 823, pp 264-265.

In the instant case, the entire "trial" consisted of depositions and briefs. On remand the trial court never saw the witnesses. Because the proceedings in *Vergote v K mart, supra,* were resolved by summary judgment, the trial court's opportunity on the two occasions the case was before it to assess the credibility of the witnesses was limited, if in fact it existed at all. Granted that in the six and one-half years of litigation numerous meetings and discussions with the trial judge occurred, and that the respected trial judge thoroughly knew the subject matter and the issues, the situation was still not akin to judging the credibility of the witnesses "live." Therefore, we opine this Court should not defer to the trial judge's findings of fact, but should follow the rule of the other jurisdictions cited above and make our own findings to determine whether the trial court erred. As noted earlier, our decision in this regard is of first impression in Michigan.

Nevertheless, based on our own independent analysis of the stipulated affidavits, exhibits and briefs, we are of the opinion that the trial court did not err in its findings of fact. In particular, we note that paragraph 10 as last amended stated: "the dedication of the improved roads *as well as the dedication of the land which is not required to be improved* shall occur upon completion of the roads and the written notice from Seller that he desires the roads to be dedicated. Purchaser shall be required to dedicate the roads 'as is' and shall not be required to change the roads, utilities and/ or other improvements installed by Purchaser." Under this language defendant continued to have

the express duty to have the improved and the unimproved portions of the road dedicated.

Contrary to defendant's assertion, the "as is" language does not refer to the unpaved condition of the in-between road. Schmidt's deposition explains "as is" as referring to the utilities that defendant had installed along the in-between road. Schmidt never said that the phrase "as is" referred to the specific condition of the in-between road itself. Stipulations of a contract are not usually construed as conditions precedent unless the court is compelled to do so by the language of the contract plainly expressed. *McCall v Freedman*, 35 Mich App 243; 192 NW2d 275 (1971). Nothing in the language of the amendment suggests that acceptance of the roads by the road commission was a condition precedent to defendant's duty to perform by dedicating the road. Therefore, the trial court did not err in finding that there was no condition precedent to defendant's duty to dedicate the roads.

Based upon our own independent review of the stipulated depositions, exhibits and briefs, we find that the defendant did breach its promise to have the entire ring road dedicated. That duty was not conditioned on the performance of third parties. Therefore, defendant is not excused from its breach.

## II

### ADMISSION OF PAROL EVIDENCE TO VARY THE TERMS OF THE WRITTEN AGREEMENT BETWEEN THE PARTIES

Defendant next argues that the trial court erred when it allowed parol evidence which varied the contract as amended. The specific parol evidence to which objection is taken is the statements in Leo Vergote and Kenneth Hale's depositions that, at

the negotiations culminating in the amendment to paragraph 10, Schmidt stated that K mart would do whatever was necessary to get the roads dedicated, even if it took completion of the in-between road. These statements are emphatically denied in the deposition testimony of Schmidt and Fred Gordon.

Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous. *Central Transport, Inc v Fruehauf Corp,* 139 Mich App 536; 362 NW2d 823 (1984). One prerequisite for the application of the parole evidence rule is a finding that the parties intended the written instrument to be a complete expression of their agreement as to the matters covered; therefore, extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on the threshold question of whether the written instrument is such an integrated agreement. *NAG Enterprises, Inc v All-State Industries, Inc,* 407 Mich 407; 285 NW2d 770 (1979). Indeed when this case was first before us we held that parole evidence could be admitted to determine whether the written contract was intended to be an entirely integrated agreement. *Vergote, supra.*

We find no error in the trial court's admission into evidence of the parole testimony. Defendant's alleged statement that it would do what was necessary even if it took completion of the in-between road added nothing to what was already required of defendant in paragraph 10 as amended. While that amendment abolished defendant's obligation to pave the entire loop road, defendant was still left with the obligation of securing dedication of the entire ring road. Implicit in the obligation to

secure dedication is the duty to do whatever is
necessary to secure the acceptance by Macomb
County. Therefore, plaintiffs' parole evidence that
defendant promised to do "whatever was neces-
sary" to secure dedication did not alter or vary the
agreement between the parties.

Assuming, arguendo, that the trial court erred
in considering the testimony, the error would be
harmless since the trial court did not use the parol
evidence in its findings of fact. Instead, the trial
court relied on the express language in paragraph
10 as amended that defendant would secure dedi-
cation of the entire ring road. Where it appears
from the evidence disclosed by the record that the
errors complained of could not have affected the
result, an appellate court should not reverse.
*Knoper v Burton,* 383 Mich 62; 173 NW2d 202
(1970). Where the absence of alleged errors would
not have changed the result, reversal should not
be granted. *Pelley v Peterbilt Motors Co,* 133 Mich
App 664,; 350 NW2d 787 (1984). In the present
case, there was sufficient evidence, absent the
parole evidence, to sustain the trial court's find-
ings that defendant breached its promise to have
the ring road dedicated. (See issue I, *supra).*

III

UPON WHICH PARTY DOES THE BURDEN OF PAVING
THE "IN-BETWEEN ROAD" FALL?

Defendant's final argument is that, in view of
what has transpired since the closing, this Court
should rule that defendant has so substantially
performed its duty under the written contract that
Macomb County's unexpected refusal to accept the
property does not create liability in the defendant.
In support of this, defendant notes that defendant
has constructed the side roads to acceptable stan-

dards, has installed all utilities, even those in the in-between area, and has put in a road bed for paving of the in-between road. Defendant then states that "since it was the arbitrary action of the Macomb County Road Commission that was not anticipated, and not some ignorance of legal requirements for dedication, a mistake of fact, not a mistake of law, has occurred." Citing *Bissel v L W Edison Co*, 9 Mich App 276, 285-287; 156 NW2d 623 (1967), defendant argues that in such circumstances,

> [f]iguratively speaking, the law inserts into contracts a clause providing legal excuse from strict performance of the contractual promise in the event that unanticipated circumstances beyond their immediate control make strict performance impossible.

The question whether a promisor's liability is extinguished in the event his contractual promise becomes objectively impossible to perform may depend upon whether the supervening event producing impossibility was or was not reasonably foreseeable when he entered into the contract. Risk of nonperformance of a contract should not fairly be thrown upon the promisor, if an unanticipated circumstance had made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. *Bissell, supra.* In the present case, the rejection by the road commission of defendant's roads should not have been an unanticipated circumstance. Plaintiff had told Schmidt that he did not think that Macomb County would accept the roads without the in-between section being paved. Therefore, the defense of impossibility is not available as

grounds for placing the burden of paving on plaintiffs.

We turn now to the main question: Where governmental approval is required in a contract and the government subsequently refuses to give its approval, on which party does the burden of performance rest? We find no Michigan cases directly on point. However, other jurisdictions have addressed the issue. In *Helms v B & L Investment Co, Inc,* 19 NC App 5; 198 SE2d 79 (1973), the North Carolina Court of Appeals held that, where a party enters into a contact knowing that permission of government officers will be required during the course of performance, the fact that such performance is not forthcoming from the government when required does not constitute an excuse for nonperformance.

In *The Security Sewage Equipment Co v McFerren,* 14 Ohio St 2d 251; 237 NE2d 898 (1968), the Ohio Supreme Court held that the risk that the Department of Health would reject plans for a central sewer treatment plant for a residential subdivision was on the construction contractor who had agreed to install and make the plant ready for use and operation. The court said that one who contracts to render a performance for which government approval is required assumes the duty of obtaining such approval, and the risk of its refusal is on him. In *Hawkins v First Federal Savings & Loan Ass'n,* 291 Ala 257; 280 So 2d 93 (1973), the Alabama Supreme Court held that illegality created by a change in the law subsequent to a contract, making performance impossible, serves as an excuse for nonperformance but illegality due to an unfavorable exercise of discretion by a government official acting under existing law is no excuse for nonperformance.

On the basis of the foregoing authority, we hold

that in the instant case the burden of paving the in-between road rests with defendant. Defendant entered into the contract knowing that it would have to secure the approval of the Road Commission of Macomb County. The fact that that permission was not forthcoming is not an excuse for nonperformance. *Helms, supra.* It is clear from the deposition and stipulated evidence that Leo Vergote would not have signed the contract without adequate assurance regarding dedication of the entire ring road. That assurance was specifically given in the second from last sentence in paragraph 10 as amended that "dedication of the improved roads as well as the dedication of the land which is not required to be improved: shall be secured by the purchaser. It is also clear from the stipulated facts, and the trial court so found, that defendant made no effort to determine Macomb County's requirements for accepting land for public use.

Having found no error on any of the issues raised, the judgment of the trial court is affirmed. Costs to plaintiffs.

Affirmed.