[681 NYS2d 523]

WEST 56TH STREET ASSOCIATES et al., Appellants, v GREATER NEW YORK MUTUAL INSURANCE COMPANY, Respondent, et al., Defendant.

First Department, December 17, 1998

**APPEARANCES OF COUNSEL**

*Harry Steinberg* of counsel (*Abraham S. Altheim* on the brief; *Newman Fitch Altheim Myers, P. C.,* attorneys), for appellants.

*Jonathan A. Dachs* of counsel (*Norman H. Dachs* on the brief; *Shayne, Dachs, Stanisci, Corker & Sauer,* attorneys), for respondent.

**OPINION OF THE COURT**

Sullivan, J.

This is an action for an adjudication declaring that defendant Greater New York Mutual Insurance Company is obligated to defend and indemnify plaintiffs, its insureds under two different liability policies, with respect to an action brought against the plaintiff insureds and others for personal injuries allegedly sustained by Gerard Young, an employee of a subcontractor, whose job was to "clean and prepare apartments that were completed as far as construction goes." Young, stand-

ing on the side of a bathtub to remove tape left on the bathroom wall, probably after it had been painted, slipped and fell. Although, at the time of the accident, construction of the particular apartment in which Young was injured had been completed, the building itself was still under construction. Indeed, a residential certificate of occupancy for the building, known as CitySpire, was not issued for several more years. Greater New York disclaimed coverage under each policy on the basis of, *inter alia*, the construction exclusion clause contained in the particular policy. The motion court validated the disclaimer by granting, on cross motions for summary judgment, Greater New York's motion and dismissing the complaint.

One of the Greater New York policies, the 77627 policy, named both plaintiffs as insureds; the second, the 78229 policy, named CitySpire Board of Managers, representing the condominium, and plaintiff West 56th Street Associates, the sponsor of the condominium under construction, as insureds. The 78229 policy provided coverage for, *inter alia*, bodily injury, defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these." The policy also included a "Basic Construction Exclusion", which provided: "This insurance does not apply to bodily injury or property damage arising out of construction or demolition operations which are performed by or on behalf of the named insured in the course of any job which involves the new construction or demolition of any load bearing wall, floor, ceiling or roof of a building or structure, provided, however, that nothing herein limits, prohibits or restricts insurance coverage for the repair, alteration, maintenance or refurbishing of a load bearing wall, floor, ceiling or roof." The second policy, number 77627, named both plaintiffs as insureds and provided coverage for liability for bodily injury subject to a construction operations exclusion, in slightly different form, which stated, "This insurance does not apply to bodily injury or property damage arising out of construction alteration or demolition operations which are performed by or on behalf of the named insured and which involve work on the exterior of the building (other than at ground level), an opening (except for the purpose of accommodating a pipe or conduit) in, demolition of, or moving of an exterior wall, a load bearing wall, roof, floor or ceiling of a building or structure."

On this appeal, plaintiffs, citing the well-settled rule that insurance policy exclusions are to be strictly and narrowly construed (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304) and

stressing the specific nature of the construction work excluded, argue that the cleaning of an apartment in which all construction work had been completed does not fall within the scope of an exclusion addressed to the construction or demolition of load-bearing walls. Greater New York takes the position that the respective exclusions except from coverage bodily injury "arising out of" construction, alteration or demolition operations which are performed by or in behalf of the named insured and involve work of the type engaged in during the construction of a new building, as was the case here. Neither party argues or indeed recognizes any relevant legal distinction between the two clauses.

It is well established that the unambiguous provisions of an insurance policy, as with any written contract, must be accorded their plain and ordinary meaning. (*Teichman v Community Hosp.*, 87 NY2d 514, 520; *Breed v Insurance Co.*, 46 NY2d 351, 355.) A court is not free to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation." (*Supra,* at 355.) The "[i]nterpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument." (*Teitelbaum Holdings v Gold*, 48 NY2d 51, 56; *Chimart Assocs. v Paul*, 66 NY2d 570, 572-573.) Here, both parties, although arguing for different interpretations, agree that the court should, without reference to extrinsic evidence, determine whether there is ambiguity in the construction operations exclusion of the policies at issue.

It is equally well established that insurance policy exclusions must be stated "in clear and unmistakable terms so that no one could be misled" (*Kratzenstein v Western Assur. Co.*, 116 NY 54, 59); "[t]hey are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction [Citations omitted]. Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case [citations omitted], and that they are subject to no other reasonable interpretation [citations omitted]." (*Seaboard Sur. Co. v Gillette Co., supra,* 64 NY2d, at 311; *see, Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652; *Incorporated Vil. of Cedarhurst v Hanover Ins. Co.*, 89 NY2d 293, 298.)

■ The two policies at issue both contain construction work exclusions, which, although superficially similar, are not identi-

cal. The difference in wording in this case is crucial. The 78229 policy excludes liability arising out of construction or demolition operations "in the course of any job which involves the new construction * * * of any load bearing wall, floor, ceiling or roof of a building or structure." Subject to certain exceptions not here applicable, the 77627 policy excludes liability arising out of construction alteration or demolition operations which "involve work on the exterior of the building * * * , an opening * * * in, demolition of, or moving of an exterior wall, a load bearing wall, roof, floor or ceiling of a building or structure."

The exclusion for liability "arising out of construction or demolition operations" in policy 78229 sweeps into its reach any such operations, i.e., alteration or demolition, "in the course of any job which involves the new construction * * * of any load bearing wall, floor, ceiling or roof of a building." Here, it is undisputed that the building in which Young was injured was still under construction. Thus, if his injury arose out of a construction operation "in the course of [a] job which involves the new construction * * * of [a] load bearing wall, floor, ceiling or roof of a building", the exclusion would apply. Contrary to plaintiffs' assertions, 78229's exclusion is not limited to construction or demolition operations which involve the new construction of any load-bearing wall, floor, ceiling or roof of a building. It applies to any construction operations in the course of a job involving the construction of a new building. Mr. Young need not, as plaintiffs contend, have been working on a load-bearing wall, floor, ceiling or roof for the exclusion to apply. Thus, the critical difference between 78229's and 77627's construction work exclusion is the former's use of the term "in the course of any job."

On this record, there can be no doubt that Young's injury, for purposes of the 78229 exclusion, arose out of construction operations since he was cleaning one of the recently completed apartments in a building still under construction; that cleaning, it should be noted, was made necessary by the construction work. Although, according to plaintiffs, there was no written contract with regard to the cleaning services performed at the site by Young's employer, its billings were directed to the construction contractor, a fact highly suggestive of a contractor/subcontractor relationship between the two.

The 77627 policy exclusion, however, without the qualifying "in the course of any job" language, stands on a different footing. It excepts from coverage construction operations "which involve work on the exterior of the building * * *, an opening

* * * in, demolition of, or moving of an exterior wall, a load bearing wall, roof, floor or ceiling of a building or structure." There is no dispute that Young's cleaning of a recently completed apartment in a building still under construction does not fall within the policy's classification of excluded construction operations. Thus, the exclusion does not apply.

■ Plaintiffs raise one other issue, not reached by the motion court, which warrants discussion. They argue that Greater New York's letter of disclaimer, issued more than three months after it allegedly learned of the facts which underlie its disclaimer, was untimely under Insurance Law § 3420 (d), which requires written notice of such disclaimer "as soon as is reasonably possible." Given the paucity of information concerning the underlying accident furnished to Greater New York, despite its efforts to ascertain the same, plaintiffs' claim of untimely disclaimer is factually deficient.

■ Nor, in light of our determination of coverage under policy number 77627, are plaintiffs, as argued, entitled to the recovery of costs and attorneys' fees for the prosecution of this action. "It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." (*New York Univ. v Continental Ins. Co.*, supra, 87 NY2d, at 324.) It was plaintiffs, the insureds, that cast Greater New York, the insurer, in a defensive posture by commencing this declaratory judgment action. Greater New York's interposition of a counterclaim, which, as pleaded, is no more than a prayer for a declaration in its favor, does not cast plaintiffs in a defensive posture entitling them to recover their attorneys' fees and costs. Since the rights of the parties in a declaratory action must be affirmatively declared one way or the other (*Medical World Publ. Co. v Kaufman*, 29 AD2d 859), the assertion of a counterclaim such as was interposed here is redundant and mere surplusage.

We have examined the other claims raised and find that they are without merit.

Accordingly, the order of the Supreme Court, Bronx County (Kenneth Thompson, Jr., J.), entered April 28, 1997, which, in a declaratory judgment action with respect to insurance coverage, denied plaintiffs' motion for summary judgment and granted defendant insurer's cross motion for summary judgment, should be modified, on the law, to declare that defendant is obligated to defend and indemnify plaintiffs in the underlying personal injury action under policy number 77627 and,

except as thus modified, affirmed, without costs or disbursements.

LERNER, P. J., ROSENBERGER, ELLERIN and RUBIN, JJ., concur.

Order, Supreme Court, Bronx County, entered April 28, 1997, modified, on the law, to declare that defendant is obligated to defend and indemnify plaintiffs in the underlying personal injury action under policy number 77627 and, except as thus modified, affirmed, without costs or disbursements.