[828 NYS2d 381]

Seaport Park Condominium, Respondent, v Greater New York Mutual Insurance Company, Appellant, et al., Defendants.

First Department, January 25, 2007

**APPEARANCES OF COUNSEL**

*Thomas D. Hughes*, New York City (*Richard C. Rubinstein* of counsel), for appellant.

*Stiefel & Cohen*, New York City (*George Stiefel* of counsel), for respondent.

**OPINION OF THE COURT**

Sullivan, J.

Defendant Greater New York Mutual Insurance Company (GNY) issued a business owners policy, effective September 30, 2003, providing first-party property damage coverage to plaintiff for its seven-story condominium apartment building at 117 Beekman Street in Manhattan. The building contained a rooftop cooling tower whose pipes burst on or about January 12, 2004, allegedly the result of freezing temperatures.

On or about May 6, 2004, plaintiff notified GNY of the incident and requested payment for the property damage to the cooling tower as a result of the burst pipes. Ultimately, on the basis of plaintiff's alleged breach of a post-loss policy condition requiring it to maintain and preserve the cooling tower for inspection, GNY disclaimed coverage for the loss, prompting this lawsuit.

GNY's policy, in relevant part, provides:

> "E. Loss Conditions . . .
>
> "3. Duties In The Event Of Loss Or Damage
>
> "a. You must see that the following are done in the event of loss or damage to Covered Property: . . .
>
> "(4) *[I]f feasible, set the damaged property aside and in the best possible order for examination. . . .*
>
> "(6) *As often as may be reasonably required, permit us to inspect the property proving the loss or damage* and examine your books and records" (emphasis added).

On May 6, 2004, the day it received notice of the loss, GNY retained Prestige Adjustment, Inc. to adjust the claim. After visiting the site and realizing that it required the services of an expert, Prestige hired Levine Group, Inc., an HVAC expert, to inspect the cooling tower and its component parts to ascertain

what had caused the pipes to burst. This inspection would, in turn, determine whether the loss was covered under the GNY policy. Levine visited the site and inspected the cooling tower on May 24 and June 1, 2004.

On the latter date, a group assembled on the roof of the building to inspect the tower. Among those assembled were a representative of Levine; the executive vice-president of Akam Associates, the managing agent of the building; George Stiefel, Seaport's attorney; Jennifer Granda, Akam's on-site manager; a representative of defendant Matco Service Corp., which had been hired by Akam on plaintiff's behalf on May 7, 2004 to replace the cooling tower; a representative of the public adjuster retained by plaintiff; and several Matco workers. After inspecting the tower for about an hour, Levine's representative reported that, while he believed there were burst pipes within the cooling tower, he was unable to render a final report until he had the opportunity to conduct a more complete examination of the cooling system. This examination would determine whether the damage was the result of a covered cause of loss under the policy. According to the affirmation of plaintiff's attorney, all parties present at that meeting agreed that Matco would remove the old tower and install a new one and would store the old tower in a safe place, "advis[ing] all parties as to where [it] would be located *and mak[ing] arrangements for its further inspection*" (emphasis added). This agreement was confirmed by Akam's on-site manager. As the complaint alleges, however, Matco destroyed the tower.

GNY subsequently denied coverage, and plaintiff commenced this action. Prior to joinder of issue, GNY moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7) on the basis of plaintiff's breach of a policy condition in failing to preserve the damaged cooling tower for inspection. Supreme Court denied the motion, finding an issue of fact based on Matco's sworn assertion that under its contract with plaintiff it had no obligation to store the cooling tower once it was removed from the building. The motion court also cited the absence of any document, report or affidavit from Levine indicating the need for a further examination of the cooling tower. Since neither of these arguments is sufficient to defeat GNY's motion, the order should be reversed and the motion to dismiss granted.

At the outset, Matco's argument that it never agreed in its May 7, 2004 contract with plaintiff to store the cooling tower

for further inspection raises no factual issue as between plaintiff and GNY to justify denial of the motion, since the parties present at the June 1, 2004 inspection agree—and Matco does not dispute—that Matco had undertaken to store the cooling tower. In any event, whether Matco was obligated under its contract with plaintiff to store the tower is irrelevant. The point is that under plaintiff's policy with GNY, as well as the June 1, 2004 agreement among all those present at the meeting, plaintiff was required to store the tower for GNY's expert to inspect, and the provisions—or lack thereof—in plaintiff's contract with Matco with regard to storage do not relieve it of its obligation to GNY under the policy.

The interpretation of the policy's terms is a question of law for the court (*Chimart Assoc. v Paul*, 66 NY2d 570, 572-573 [1986]). As with the interpretation of any contract, the unambiguous terms of an insurance policy must be accorded their plain and ordinary meaning (*Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514, 520 [1996]; *2619 Realty v Fidelity & Guar. Ins. Co.*, 303 AD2d 299, 300 [2003], *lv denied* 100 NY2d 508 [2003]; *West 56th St. Assoc. v Greater N.Y. Mut. Ins. Co.*, 250 AD2d 109, 112 [1998]). The provisions in the GNY policy at issue could not be clearer. Taken together, the provisions relating to the insured's "Duties In The Event Of Loss Or Damage" imposed upon plaintiff the obligations to set the damaged property aside for examination and to permit GNY to inspect the damaged property as often as reasonably required, in order to determine whether the loss was covered.

GNY and plaintiff, as well as the others present at the June 1 inspection, agreed that Matco would store the cooling tower and make it available to GNY's expert for a further inspection. It is undisputed that because of the destruction of the replaced cooling tower, GNY never had the opportunity for a further inspection of the damage. Thus, plaintiff breached the policy condition in depriving GNY of this opportunity.

Plaintiff argues that an issue of fact exists as to whether GNY required an additional inspection of the cooling tower. This argument, of course, ignores the agreement at the June 1 rooftop meeting for a further inspection. Such an agreement reflects a tacit acknowledgment that a further inspection was reasonably required. Unfortunately, that inspection never took place because the property was destroyed.

In that regard, the argument, apparently accepted by Supreme Court, that GNY should have submitted an affidavit

from Levine, its HVAC expert, attesting to the necessity of an additional inspection, is similarly misguided. It ignores plaintiff's admission that all the parties agreed on June 1, 2004 to permit GNY a final inspection of the cooling tower to complete its investigation.

The failure to preserve the cooling tower is no mere technicality. The interpretation of an insurance contract, as noted, presents a question of law (*Chimart,* 66 NY2d at 572-573), and a court is not free to "make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation" (*Breed v Insurance Co. of N. Am.,* 46 NY2d 351, 355 [1978]). The condition at issue here, i.e., the obligation to preserve the damaged cooling tower, is clear and unambiguous and stated in unmistakable language. Thus, it constitutes an express condition precedent (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.,* 86 NY2d 685, 691 [1995]) that must be literally complied with before plaintiff may recover (*Sulner v G.A. Ins. Co. of N.Y.,* 224 AD2d 205 [1996], *lv denied* 88 NY2d 805 [1996]; *see Charney v Commonwealth Land Tit. Ins. Co.,* 215 AD2d 152 [1995], *lv denied* 86 NY2d 709 [1995]). Since compliance with the requirement is a condition precedent to coverage, the insurer need not show prejudice (*see Great Canal Realty Corp. v Seneca Ins. Co., Inc.,* 5 NY3d 742, 743 [2005]). That plaintiff was only required to preserve the tower "if feasible" does not warrant a different conclusion. Preservation was not only feasible here, it was expressly agreed to by plaintiff.

Plaintiff offers as an excuse simply that Matco is the party responsible for the tower's destruction, conceding that the tower was destroyed before GNY's expert was afforded a dispositive inspection, to which the parties had agreed. While that circumstance may give rise to a claim against Matco, it does not excuse plaintiff's failure to comply with the policy's loss condition, and thus precludes its recovery against GNY.

Accordingly, the order of the Supreme Court, New York County (Walter B. Tolub, J.), entered June 20, 2005, which denied GNY's motion to dismiss the complaint, should be reversed, on the law, without costs or disbursements, the motion granted and the complaint against GNY dismissed. The Clerk is directed to enter judgment in favor of GNY dismissing the complaint as against it.

MAZZARELLI, J.P., MARLOW, BUCKLEY and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered June 20, 2005, reversed, on the law, without costs or disbursements, the motion granted and the complaint against Greater New York Mutual Insurance Company dismissed. The Clerk is directed to enter judgment in favor of GNY dismissing the complaint as against it.