■ Joseph Yasgur et al., Appellants, v 17 Battery Associates LLC et al., Respondents, et al., Defendants. [11 NYS3d 131]—

Order and judgment (one paper), Supreme Court, New York County (Barbara R. Kapnick, J.), entered May 30, 2014, dismissing the remaining causes of action in the complaint, specifically, the first cause of action against defendant 17 Battery Associates LLC for breach of contract, the fourteenth cause of action against defendant 17 Battery Associates LLC for an accounting, and the seventeenth and eighteenth causes of action against defendants Allen Gross and Edith Gross for fees and costs, as premature, unanimously affirmed, without costs.

In this action involving the interpretation of a "nominee agreement" entered into by plaintiffs and defendant 17 Battery in December 1999, the key issue on appeal is the construction of paragraph 4 of the Agreement which provides that plaintiffs were to be paid $250,000 on January 10, 2000 "plus 20% of the net profits in excess of $13,500,000 from the sale of the condominium units as, if and when such net profits are distributed." After the testimony of four witnesses over the course of the

two-day bench trial, the court correctly determined that net profits could not be calculated until all the units were sold, and there is no basis upon which to disturb this determination (*see Watts v State of New York*, 25 AD3d 324, 324 [1st Dept 2006]). Extrinisic evidence, including deposition testimony and additional provisions of the contract contradict plaintiffs' assertion that the costs and expenses are calculated at the time of each individual sale, at which time "net profits" in excess of $13,500,000 should be distributed to them (*see Foot Locker, Inc. v Omni Funding Corp. of Am.*, 78 AD3d 513, 515 [1st Dept 2010]).

With respect to paragraph 9 of the Nominee Agreement which provides that "the obligation to make payments to [plaintiffs] pursuant to Paragraph 4 and Paragraph 11 hereof shall survive the termination of this Agreement until paid in full," the motion court properly determined that paragraph 4 refers to both the payment of $250,000 (which has already been paid to plaintiffs), as well as "net profits," and paragraph 11 refers to any payments made under the indemnity provision, as opposed to multiple payments of "net profits," as asserted by plaintiffs. Contrary to plaintiffs' contention, the pre-execution drafts do not change this result, as they do not include any negotiation of or change to the seminal phrase "in the aggregate," or the phrase "all of the units." The plain, ordinary meaning of these terms supports the court's construction (*see Seaport Park Condominium v Greater N.Y. Mut. Ins. Co.*, 39 AD3d 51, 54 [1st Dept 2007]).

Nor did the court's construction produce a commercially unreasonable result, because plaintiffs were paid $250,000 up front for agreeing to purchase the subject units as nominees, undertook no risk, and defendants were responsible for all costs and expenses incurred in connection with the units until they are sold. Paying plaintiffs profits prior to the payment of all costs and expenses in carrying all units could result in a windfall to plaintiffs (*see Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170, 171 [1st Dept 2003]).

Plaintiffs did not plead causes of action for frustration of purpose and the implied covenant of good faith and fair dealing. As stated by the court, nothing in its decision impairs plaintiffs' ability to commence new litigation after all units are sold. Until then, plaintiffs' claims are premature. Concur—Friedman, J.P., Acosta, Moskowitz, Richter and Feinman, JJ.