# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL SCHWARTZ and ROCHELLE
SCHWARTZ,

UNPUBLISHED
March 15, 2016

Plaintiffs-Appellants,

v

No. 322702
Grand Traverse Circuit Court
LC No. 2013-029886-NZ

ENCOMPASS INDEMNITY COMPANY,

Defendant-Appellee.

Before: MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In this insurance-policy dispute, plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

Plaintiffs insured the subject residential property through a homeowners' policy with defendant, Encompass Indemnity Company. The subject claim arose in connection with a renovation project that began in January 2012. Plaintiffs' architect and contractor presented plans for additions to the home and the garage and a reconfiguration of the deck.

Almost immediately after the Township's approval of their plans on March 13, 2012, complications ensued. A survey revealed that the south wall of the house before renovation violated the 10-foot setback requirement of the Township's zoning ordinance. This necessitated adjusting the home's layout to conform to the ordinance. During the demolition phase the contractor discovered water damage and what he believed to be mold. The contractor attributed this damage to improper roof installation and leaks around the windows. The contractor executed an extensive demolition of what he said were the water-damaged portions of the home.

According to the contractor, after all of the demolition, the "whole center structure," "the foundation," and "the footings" were left standing. When interviewed by defendant's agent, the contractor summarized that the demolition consisted of "30% teardown, 40% because of the issues, and 30% because of the county. That's about 100%."

Plaintiff filed a claim with defendant for both mold and "over–demolition." When defendant's adjuster inspected the home on April 16, none of the alleged mold affected material

-1-

was on-site. There remains a dispute concerning the specifics of the processing of the construction debris and the communication between the owner and the contractor. However, it is undisputed that the contractor managed the material and that it was disposed of after the claim was filed.

In denying plaintiffs' claims, defendant relied on the following provisions within the policy:

REAL PROPERTY-COVERED PERILS

*We* cover direct physical loss to property described in Real Property-Insuring Agreement, unless the loss is not covered under Property Coverage Losses We Do Not Cover.

* * *

LOSSES WE DO NOT COVER

*We* do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1.      Real Property and Tangible Personal Property.  *We* do not insure for loss:

* * *

c.      Or damage due to neglect, meaning neglect of *a covered person* to use all reasonable means to save and preserve property at and after the time of a loss.

d.      Involving intentional or criminal acts of or at the direction of one or more *covered persons*, if the loss that occurs:

(1)      May reasonably be expected to result from such acts; or

(2)      Is the intended result of such acts.

* * *

2.      Real Property.  *We* do not insure for loss:

* * *

d.      Caused by the following:

* * *

-2-

(3)      Rust or other corrosion, mold, fungi, wet or dry rot;[1]

* * *

g.      To covered real property caused by any of the following. However, any ensuing loss not excluded or excepted in this policy is covered.

* * *

(3)      Faulty, inadequate or defective:

(a)      Planning, zoning, development, surveying, siting;

(b)      Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(c)      Materials used in repair, construction, renovation, or remodeling; or

(d)      Maintenance;

of part or all of any property whether on or off *your residence premises*.

* * *

4.      Your Duties After Loss.

*You* agree to see that the following things are done after a loss. *We* have no duty to provide coverage under this policy unless there has been full compliance with these duties:

a.      Give prompt notice to *us* or *our* agent.

* * *

d.      Protect the property from further damage. If repairs to the property are required, *you* must:

(1)      Make reasonable and necessary repairs to protect the property; and

---

[1] The policy excluded all loss caused by mold. However, an amendment to the "deluxe" policy provided up to $10,000 for the "remediation" of a biological irritant, including mold.

(2)     Keep an accurate record of repair expenses.

* * *

f.      As often as *we* reasonably require:

(1)     Show the damaged property before its repair or disposal, except as provided in 4.d., above;

* * *

g.      Allow *us* to take samples of damaged and undamaged property for inspection, testing, and analysis.

Plaintiffs filed a complaint on July 26, 2013, alleging that defendant breached the policy by "denying coverage for the loss." On May 14, 2014, defendant filed a motion for summary disposition under MCR 2.116(C)(10). The trial court granted defendant's motion. The trial court found that both the claim for mold and over-demolition were covered losses. However, the court found that plaintiffs could not recover on the mold because of spoliation of evidence, and were precluded from recovery on the demolition claim due to the faulty workmanship policy exclusion.

## II. ANALYSIS

Plaintiffs first argue that a covered loss occurred as a result of their contractor's unauthorized removal of water-damaged material and that such a peril was not excluded by the faulty workmanship exclusion. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." The affidavits, pleadings, depositions, admissions, and other documentary evidence are to be considered in a light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). Further, "[t]his case involves the interpretation and application of an insurance policy, which is a question of law reviewed de novo." *Hunt v Drielick*, 496 Mich 366, 372; 852 NW2d 562 (2014).

Our Supreme Court recently set forth the general principles governing a court's review of an insurance contract as follows:

An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to "determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins Co v Churchman,* 440 Mich 560, 566; 489 NW2d 431 (1992). "[W]e employ a two-part analysis" to determine the parties' intent. *Heniser v Frankenmuth Mut Ins Co,* 449 Mich 155, 172; 534 NW2d 502 (1995). First, it must be determined whether "the policy provides coverage to the insured," and, second, the court must "ascertain whether that coverage is negated

-4-

by an exclusion." *Id.* (citation and quotation marks omitted). While "[i]t is the insured's burden to establish that his claim falls within the terms of the policy," *id.,* "[t]he insurer should bear the burden of proving an absence of coverage," *Fresard v Mich Millers Mut Ins Co,* 414 Mich 686, 694; 327 NW2d 286 (1982) (opinion by Fitzgerald, C.J.). See, also, *Ramon v Farm Bureau Ins Co,* 184 Mich App 54, 61; 457 NW2d 90 (1990). Additionally, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Churchman,* 440 Mich at 567; 489 NW2d 431. See, also, *Group Ins Co of Mich v Czopek,* 440 Mich 590, 597; 489 NW2d 444 (1992) (stating that "the exclusions to the general liability in a policy of insurance are to be strictly construed against the insurer"). However, "[i]t is impossible to hold an insurance company liable for a risk it did not assume," *Churchman,* 440 Mich at 567, 489 NW2d 431, and, thus, "[c]lear and specific exclusions must be enforced," *Czopek,* 440 Mich at 597, 489 NW2d 444. [*Hunt,* 496 Mich at 372-373.]

In this case, the policy states that it covers perils that cause "direct physical loss to property," absent an applicable exclusion. It has been recognized that where the policy, as in this case, does not define the phrase "direct physical loss," it would be consistent with Michigan law to define the phrase as indicating an "immediate or proximate cause, as distinct from one that is remote or incidental." *Universal Image Productions, Inc v Chubb Corp*, 703 F Supp 2d 705, 709 (ED Mich, 2010) quoting *Acorn Inv Co v Michigan Basic Property Ins Assn*, unpublished opinion per curiam of the Court of Appeals, issued September 15, 2009 (Docket No. 284234), p. 2. Plaintiffs sought to recover the costs associated with the contractor's extensive demolition. That demolition was done either due to the contractor's error or his faulty workmanship, or due to the contractor correctly addressing faulty workmanship of the persons responsible for the roof and window installation. The contractor was not an unknown interloper. He was plaintiffs' agent. Plaintiffs did present evidence that he acted in error and without their permission but even if that is true such action equates to faulty workmanship on his part and is excluded from recovery under the homeowners policy.

Plaintiffs ask this court to extrapolate from the holding in *Radenbaugh v Farm Bureau Gen Ins Co*, 240 Mich App 134; 610 NW2d 272 (2000), that to the extent the contractor's actions were not authorized by them, damages arising from the unauthorized conduct are covered occurrences. *Radenbaugh* addressed a commercial general liability (CGL) policy. The policy in *Radenbaugh* stated: " 'bodily injury' or 'property damage' is covered if caused by an 'occurrence.' 'Occurrence' is defined by the policy as . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions." 240 Mich App at 140. *Radenbaugh* concluded that, "when an insured's defective workmanship results in damage to the property of others, an 'accident' exists within the meaning of the standard comprehensive liability policy." *Id*. at 147. *Radenbaugh* further considered the defendant's argument "that there was no duty to defend or indemnify by operation of the 'business risks' exclusion in the policy," which stated that the policy does not apply to " 'Property damage' to 'your product' arising out of it or any part of it." *Id*. at 150. That exclusion has been called a "faulty workmanship exclusion," which this Court held " 'unambiguously excludes coverage as to damage to the particular part of property with regard to which the workmanship was faulty. But it does not exclude coverage as to damages to property other than the particular part of the property with regard to which the workmanship was faulty.' " *Id*. at 150, quoting *Underwriters*

-5-

*at Interest v SCI Steelcon*, 905 F Supp 441, 444 (WD Mich, 1995). See also *Fresard v Michigan Millers Mut Ins Co*, 414 Mich 686, 702; 327 NW2d 286 (1982) (holding that "[t]he insured only is required to absorb the cost of *replacement or repair of its own work where the damage arises out of the work*"). We are not persuaded that *Radenbaugh* affords plaintiffs any relief. Initially, we note that the policy in this case excludes damages arising from "faulty workmanship" without the qualifier "your." An insurer can only be liable for risks assumed in the policy. *Churchman*, 440 Mich at 567. While plaintiffs correctly state that policy exclusions are to be narrowly construed, even a narrow construction of the plain language of this policy excludes recovery for the contractor's demolition efforts.

Plaintiffs offer no Michigan authority to support their argument to limit the exclusion to authorized actions and the foreign authority is not persuasive. The lack of authorization in *Husband v Lafayette In Co*, 635 So 2d 309, 310-311 (La App, 1994), concerned work done in violation of the lease between the tenant and the insured landlord. Another case relied upon by plaintiff, *Home Savings of America v Continental Ins Co*, 87 Cal App 4th 835, 854; 104 Cal Rptr 2d 790 (2001), also based it's holding on the absence of legal authority for repairs made at the behest of a third-party without the named insured mortgagee's permission or knowledge. The case before this Court is factually dissimilar. At best, the contractor failed to meet obligations owed to the insured under the contract for services.

Plaintiffs also argue that the trial court erred in dismissing this case on the basis that they failed to preserve evidence of the mold.[2] Again, we disagree. As set forth above, this Court reviews a trial court's decision on a motion for summary disposition de novo, considering the evidence in a light most favorable to plaintiffs. *Moser*, 284 Mich App at 538; *Liparoto Constr, Inc*, 284 Mich App at 29. We also review de novo issues relating to the application and interpretation of contractual language. *Hunt*, 496 Mich at 372.

To the extent that this case involves the inherent power of the trial court to sanction a party for failing to preserve evidence that the party knew or should have known was relevant to the litigation, the trial court's exercise of such power "may be disturbed only on a finding that there has been a clear abuse of discretion." *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 211; 659 NW2d 684 (2002). A clear abuse of discretion occurs where "the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Citizens Ins Co of Am v Juno Lighting, Inc*, 247 Mich App 236, 244-245; 635 NW2d 379 (2001) (citations and quotations omitted).

On appeal, plaintiffs only argue that the trial court erred in attributing their contractor's disposal of the evidence of mold to plaintiffs and insinuate that defendant's adjuster had a duty to recover the disposed evidence. On that basis, plaintiffs argue that they did not breach any duty owed to defendant to preserve evidence. As an initial matter, defendant persuasively explains

---

[2] As mentioned, the trial court perceived this issue as relating only to plaintiffs' claim for mold remediation, which plaintiffs do not dispute, and noted that the parties do not dispute that when defendant's adjuster inspected the property, the alleged moldy materials were already in dumpsters.

that express language in the policy made preserving samples of the mold for defendant's testing a condition precedent to recovery for the remediation of the mold. See generally, *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 467-468; 761 NW2d 846 (2008) (stating that unless this condition precedent is contrary to public policy or defendant waived its application, plaintiff's breach has relieved defendant of liability). See also *Seaport Park Condo v Greater New York Mut Ins Co*, 39 AD3d 51, 55; 828 NYS2d 381 (2007) (stating that because compliance with the requirement to preserve evidence is "a condition precedent to coverage, the insurer need not show prejudice").

However, "[c]ourts are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language of the contract." *Yeo v State Farm Ins Co*, 219 Mich App 254, 257; 555 NW2d 893 (1996). See also *Vergote v K Mart Corp*, 158 Mich App 96, 107; 404 NW2d 711 (1987). The policy in this case states that defendant has "no duty to provide coverage under this policy unless there has been full compliance" with the enumerated duties of the insured. One of those duties states that plaintiffs must "allow" defendant "to take samples of damaged and undamaged property for inspection, testing, and analysis." While plaintiffs argue that the contractor's conduct should not be imputed to plaintiffs, the clear intention of this duty is to make certain that defendant would have the opportunity to determine whether there is, in fact, mold damage and the extent of any damage. Contrary to plaintiffs' argument, defendant was not allowed this opportunity because the record reveals that the allegedly moldy material was thrown into dumpsters, mixing with other construction debris and was not protected from the weather.

While there is an arguable question of fact regarding plaintiffs' attempt in preserving the evidence and knowledge or authorization of their contractor's actions, see Couch on Ins 10A § 148:69 (stating that "[w]hether the insured failed to preserve and protect the insured property is generally a question of fact for the jury"), given the circumstances of this case, there was no genuine issue of material fact. The demolition began on March 13, 2012, and was scheduled to be completed by March 23, 2012. Plaintiffs met with an attorney on March 26, 2012, to discuss filing an insurance claim, and specific to the mold issue, the text message log provided by defendant below reveals that plaintiff Rochelle told her contractor that he should not lose pictures because an attorney she met with stated that they would be needed for an insurance claim. Plaintiffs did not file their claim of insurance however, until April 10. Accordingly, at least from the time when plaintiffs met with an attorney, plaintiffs were aware that they needed to preserve some evidence of the mold, and they should have known that they needed to preserve evidence for sampling, as their policy required. See *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 415; 751 NW2d 443 (2008) ("One is presumed to have read the terms of his or her insurance policy"). Yet, even after this date, plaintiffs do not allege that they at least attempted to preserve the mold themselves or asked the contractor whether it was possible and directed him to do so or to try. Instead, it remained in dumpsters, further mingling with other construction materials until defendant's adjuster arrived on April 16, 2012, and the allegedly moldy materials were apparently no longer recoverable for testing. It is plaintiffs' burden to show compliance with and the right to recover under the policy. See *Heniser*, 449 Mich at 172; *Helmer v Dearborn Nat Ins Co*, 319 Mich 696, 700; 30 NW2d 399 (1948). Absent even an assertion that plaintiffs did anything other than ask the contractor to save pictures, plaintiffs failed to establish a genuine issue of material fact that they met their duty to allow defendant to sample the alleged moldy material.

The trial court also based its decision on general spoliation principles, reasoning that defendant was prevented from "having a fair opportunity to investigate and then defend the claim or to grant the claim if it's appropriate." In sanctioning a party for failing to preserve evidence, "a trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Brenner v Kolk*, 226 Mich App 149, 161; 573 NW2d 65 (1997). See also *Citizens Ins Co of Am v Juno Lighting, Inc*, 247 Mich App 236, 242; 635 NW2d 379 (2001). However, "dismissal is a harsh remedy to be invoked cautiously[,]" *North v Dept of Mental Health*, 427 Mich 659, 662; 397 NW2d 793 (1986), and the trial court did not consider alternatives. See *Brenner*, 226 Mich App at 160. Under the circumstances of this case, however, the entire mold remediation claim depended on the presence of mold, and thus, while dismissal may seem harsh where plaintiffs apparently lacked some degree of knowledge or control over the initial methods in which the materials were removed and disposed of, it is of greater prejudice to defendant who had absolutely no control over the evidence.

Affirmed.

/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan