RAMON v FARM BUREAU INSURANCE COMPANY

Docket No. 110248. Submitted January 11, 1990, at Grand Rapids. Decided June 4, 1990. Leave to appeal applied for.

Steven John Ramon and his wife, Annette Ramon, owned a farm which was insured against loss by fire by Farm Bureau Insurance Company. Under a separate policy, Farm Bureau also insured the Ramons' motor vehicles. A fire damaged the Ramons' barn, farm personal property stored inside the barn, other items of personal property, and the Ramons' vehicles. The Ramons submitted claims to Farm Bureau under both insurance policies, which were denied on the ground that the Ramons committed arson and fraud. Steven Ramon was charged by the Isabella County Prosecutor with setting the fire with intent to burn the property and with intent to defraud an insurance company. Annette Ramon was never charged with any crime. On November 12, 1986, the Ramons filed suit against Farm Bureau in Isabella Circuit Court alleging breach of contract. On March 21, 1987, Steven Ramon entered a plea of nolo contendere to a reduced charge of attempting to obtain money under false pretenses less than $100, a misdemeanor. In November, 1987, Farm Bureau, pursuant to the insurance policies, paid $10,683.11 to General Motors Acceptance Corporation, which had a lien on one of the Ramons' vehicles for that amount, and $8,000 to the Farmer's Home Administration, which had a lien against other property damaged in the fire. The court, Paul F. Connell, J., granted partial summary disposition in favor of Farm Bureau and dismissed Steven Ramon's claims for payment under the farmowner's insurance policy on the ground that his nolo contendere plea barred his action against defendant. The court also held that Farm Bureau was entitled to set off the amount it paid to the lienholders against the amount of its liability to Annette Ramon under the farmowner's policy and that Annette Ramon's claims would be satisfied upon the payment to her of $110.89 by defendant. Plaintiffs appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Criminal Law § 499; Insurance §§ 1743, 2017.
Plea of nolo contendere or non vult contendere. 89 ALR2d 540.

1. The trial court erred by allowing Farm Bureau to use Steven Ramon's plea of nolo contendere to the misdemeanor charge of attempting to obtain money less than $100 under false pretenses to bar his claims under the farmowner's insurance policy. It is improper to summarily dispose of an insured's claim for coverage merely upon the basis that he entered a plea of nolo contendere. Farm Bureau must establish by a preponderance of the evidence that Steven Ramon made a false statement in violation of the policy conditions before his rights under the policy are barred.

2. Absent compelling equities that require a different result, Annette Ramon, as an innocent insured, is entitled to only one-half of the proceeds under the insurance policy after the lienholders were paid. Whether there are any compelling equities requiring a different result is a question best left to the trial court on remand.

3. The trial court erred in adding together the total property damage amount claimed by plaintiffs under both policies, dividing that amount in half, and then allowing defendant setoff against its liability under the farmowner's policy for the full amounts it had paid to lienholders under both policies. The damage amounts claimed by plaintiffs and the amounts of setoff to which defendant was entitled under each policy must be treated separately. Defendant is clearly entitled to set off the amount paid to the FHA in satisfaction of the unpaid balance of the mortgage debt jointly and severally owed by plaintiffs, but is not entitled to set off the amount it paid under the automobile insurance policy it had issued to plaintiffs to satisfy the lien held by GMAC on plaintiffs' car against Annette Ramon's recovery on the farmowner's insurance policy. Defendant may set off the amount paid to GMAC only against any excess proceeds due to plaintiffs under the automobile insurance policy.

Reversed and remanded.

1. INSURANCE — FARMOWNER'S INSURANCE — DAMAGE CAUSED BY INSURED — SUMMARY DISMISSAL OF CLAIMS — NOLO CONTENDERE PLEAS.

An insured's claims against his insurer for payment of proceeds under a farmowner's insurance policy may not be summarily dismissed on the ground that the insured entered a plea of nolo contendere to the misdemeanor charge of attempting to obtain money under false pretenses less than $100 where the charge arose out of the suspicion that the insured intentionally set a fire with the intent to defraud the insurance company; it is

improper to summarily dispose of an insured's claim for cover-age merely on the basis that he entered a plea of nolo conten-dere.

2. INSURANCE — FARMOWNER'S INSURANCE — DAMAGE CAUSED BY INSURED — TENANCY BY THE ENTIRETY — RECOVERY OF INNO-CENT INSURED.

An innocent spouse, who as a tenant by the entirety owns real property insured under a farmowner's policy, normally may recover, in the absence of compelling equities requiring a different result, one-half the amount of property damage not exceeding the policy limits where damage is caused by a fire deliberately set by the other coinsured spouse.

3. INSURANCE — FARMOWNER'S INSURANCE — MOTOR VEHICLES — SETOFF.

It was error for a trial court to add together the total property damage amount claimed by the insured under two separate insurance policies, one a farmowner's policy and the other specifically insuring only motor vehicles, divide that amount in half, and then allow the insurer setoff against its liability under the farmowner's policy for the full amounts it paid to lienholders under both policies; the damage amounts claimed by the insured and the amounts of setoff to which the insurer is entitled under each policy must be treated separately.

*Fowler, Tuttle, Clark & Coleman* (by *David M. Clark*), for plaintiffs.

*Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C.* (by *E. Frederick Davison*), for defendant.

Before: MURPHY, P.J., and HOOD and NEFF, JJ.

MURPHY, P.J. Plaintiffs appeal as of right from the trial court's grant of summary disposition in favor of defendant and dismissal of plaintiffs' claims for payment of proceeds under a fire insur-ance policy issued by defendant. We reverse.

On appeal, plaintiffs contend that the trial court erred as a matter of law when it granted summary disposition in favor of defendant for two reasons.

First, plaintiffs argue that plaintiff Steven Ra-
mon's plea of nolo contendere to a charge of false
swearing in the related criminal prosecution was
improperly used to bar his claims under the fire
insurance policy issued by defendant. Second,
plaintiffs argue that the trial court erred when it
limited Annette Ramon's recovery to one-half of
the insurance proceeds and then further erred by
allowing defendant a one-hundred-percent setoff
against her recovery for amounts paid to the lien-
holders.

In 1983, plaintiffs purchased a residential farm
property at 8236 South Summerton Road, Shep-
herd, Michigan. Situated on the property were a
two-story single-family residence, a wood-frame
barn, and several outbuildings. Plaintiffs insured
this real property, as well as their personal prop-
erty, against fire loss through a policy issued by
defendant. The policy, which named both plaintiffs
as insureds, provided coverages of $30,000 for the
residence, $15,000 for unscheduled personal prop-
erty, $25,000 for farm personal property, and
$8,000 for the barn. Additional interests protected
under the policy were the liens against the barn
and the farm personal property stored inside the
barn held by the Farmer's Home Administration
(FHA).

Defendant also issued a separate policy insuring
plaintiffs' motor vehicles, including a 1984 Oldsmo-
bile. A lien held by General Motors Acceptance
Corporation (GMAC) on this vehicle was protected
under this policy for the amount of $10,683.11.

On June 19, 1985, plaintiffs' barn, the farm
personal property stored inside it, other items of
plaintiffs' personal property, and plaintiffs' vehi-
cles were damaged in a fire. On August 26, 1985,
plaintiffs submitted sworn statements in proof of
loss which claimed $37,688 under both policies

issued by defendant. On the basis of allegations of arson and fraud, defendant denied plaintiffs' claims for coverage. Consequently, plaintiffs commenced the present action for breach of the insurance contracts on November 12, 1986.

In the meantime, the Isabella County Prosecutor charged plaintiff Steven Ramon with setting fire to property with intent to burn, MCL 750.73; MSA 28.268, and setting fire to property not a dwelling with intent to defraud an insurance company, MCL 750.75; MSA 28.270. Both charges are ten-year felonies. Steven Ramon rejected several offers of reduced charges in exchange for a guilty plea proposed by the prosecutor before trial commenced.

Later, after four days of trial, the prosecutor offered to dismiss the pending charges and allow Steven Ramon to plead nolo contendere to a misdemeanor charge of attempting to obtain money under false pretenses less than $100, MCL 750.218; MSA 28.415; MCL 750.92; MSA 28.287, which carried a maximum penalty of forty-five days in jail or a $50 fine or both. Steven Ramon accepted this offer upon the condition that the prosecutor state on the record that he was in no way accusing Steven Ramon of setting fire to the barn. The plea was entered, as agreed, on March 21, 1987. Steven Ramon was sentenced to one year probation and twenty days in jail, to be suspended upon recommendation by the probation department.

Plaintiff Annette Ramon was never charged with any crime arising out of the fire at plaintiffs' farm.

In November, 1987, pursuant to the insurance policies issued to plaintiffs, defendant paid $10,683.11 to GMAC and $8,000 to the FHA in satisfaction of their respective lienholder's interests.

I

Plaintiffs first argue that the trial court erred by allowing defendant to use plaintiff Steven Ramon's plea of nolo contendere to the misdemeanor charge of attempting to obtain money less than $100 under false pretenses to bar his claims under the fire insurance policy. We agree.

It is well settled that an insurer may deny coverage on the basis of the insured's criminal conduct. *Lichon v American Universal Ins Co,* 173 Mich App 178, 181; 433 NW2d 394 (1988), and cases cited therein. False swearing by an insured will void an insurance policy. *Morgan v Cincinnati Ins Co,* 411 Mich 267, 276; 307 NW2d 53 (1981). The dispute in this case is not whether plaintiff Steven Ramon's wrongful acts can bar his right to recovery, but whether defendant can use the fact of a nolo contendere plea to an attempted misdemeanor as a conclusive bar to plaintiff's recovery.

Under MRE 410, evidence of a guilty plea, later withdrawn, of a plea of nolo contendere, of an offer to plead guilty or nolo contendere to a crime, or of statements made in connection with such pleas or offers is inadmissible in any civil or criminal proceeding against the person who made the plea or offer. In *Wheelock v Eyl,* 393 Mich 74; 223 NW2d 276 (1974), our Supreme Court held that evidence of a criminal conviction after trial, a plea, or payment of a fine is not admissible as substantive evidence of the conduct at issue in a civil case arising out of the same occurrence.

However, this Court has declined to apply the broad rule of *Wheelock* in proceedings to determine insurance coverage. In *Imperial Kosher Catering, Inc v Travelers Indemnity Co,* 73 Mich App 543, 544-546; 252 NW2d 509 (1977), this Court held that, in an action brought by the insured, evidence

of the insured's criminal conviction may be used as an operative fact to bar his recovery under an insurance policy. See also *Transamerica Ins Co v Anderson,* 159 Mich App 441, 445; 407 NW2d 27 (1987); *Yother v McCrimmon,* 147 Mich App 130, 134; 383 NW2d 126 (1985). But see *Danish Inn, Inc v Drake Ins Co of New York,* 126 Mich App 349; 337 NW2d 63 (1983).

Moreover, in *Lichon, supra,* a panel of this Court extended the *Imperial Kosher* holding to include pleas of nolo contendere. However, in a well-reasoned dissent, Judge SAWYER argued that it is improper to summarily dispose of an insured's claim for coverage merely upon the basis of the fact that he entered a plea of nolo contendere. We agree and reject the rule set forth in the majority opinion in *Lichon, supra.* We specifically adopt the reasoning of Judge SAWYER's dissent in *Lichon.*

One of the principle purposes for the use of the nolo contendere plea is to allow a defendant in a criminal case to minimize the other repercussions of his plea, such as civil litigation. Allowing a trial court to use a nolo contendere plea in deciding a motion for summary disposition in a related civil action renders use of this plea in a criminal proceeding meaningless. *Id.,* pp 182-183.[1]

The majority opinion in *Lichon* contended that prohibiting the use of a nolo contendere plea in an insurance coverage case allows the insured wrongdoer to use the plea as a sword rather than a shield. *Id.,* p 180. To the contrary, we agree with Judge SAWYER that barring use of the nolo conten-

[1] It is interesting to note that in the present case plaintiff Steven Ramon claims his nolo contendere plea was merely a plea of convenience which came only after commencement of trial and was conditioned on the prosecutor's making a statement that he was not accusing Steven Ramon of setting the fire. Plaintiff contends that he only entered the plea because he would have incurred thousands of dollars of additional attorney fees to have the case tried to conclusion.

dere plea to conclusively establish that plaintiff Steven Ramon violated the terms of his insurance policy does not enable the insured to use the plea as a sword to enforce the policy. There is nothing to prevent the insurer from proving its defenses against the insured to deny coverage. On the other hand, allowing defendant to assert the plea as a conclusive bar to plaintiff's claim is tantamount to giving defendant a sword that defeats the very purpose of a nolo contendere plea. Under such a circumstance, plaintiff's only alternative would be to insist on a full trial of the criminal charge or, at the least, to delay the criminal proceedings until the insurance case was resolved. *Id.,* pp 183-184.

Furthermore, it is well established that the insurer has the burden to prove applicability of any exclusions or other defenses it raises to bar coverage. *Fresard v Michigan Millers Mutual Ins Co,* 414 Mich 686, 694; 327 NW2d 286 (1982), reh den 417 Mich 1103 (1983). To allow defendant to use plaintiff's nolo contendere plea to an attempted misdemeanor as an admission of guilt which conclusively bars coverage effectively relieves defendant of its burden. We believe that this is a proper reason to distinguish between a conviction by a jury or after a guilty plea and plaintiff's conviction, which was based on a nolo contendere plea. Significantly, in a nolo contendere plea, unlike in a guilty plea, a defendant does not personally present admissions or facts on the record that establish that he committed the crime.

We are in no way implying that plaintiff Steven Ramon is entitled to coverage under the policy if, in fact, he made a false statement in violation of the policy conditions. We only hold that defendant must establish its claim that plaintiff violated the terms of the policy by a preponderance of the

evidence before plaintiff's rights under the policy are barred.

II

Second, plaintiffs contend that the trial court erred as a matter of law in ruling that plaintiff Annette Ramon, as an innocent insured, was entitled to only one-half of the proceeds under the insurance policy after the lienholders were paid. We disagree.

Traditionally, the fraud of one insured barred recovery under the policy by any other insureds, regardless of their innocence of wrongdoing. *Monaghan v Agricultural Fire Ins Co of Watertown, NY,* 53 Mich 238; 18 NW 797 (1884). This rule was eventually modified to allow an innocent coinsured to recover insurance proceeds when his or her property interest was divisible, as opposed to joint and nonseparable, from that of the wrongdoer. *Simon v Security Ins Co,* 390 Mich 72; 210 NW2d 322 (1973). In *Morgan v Cincinnati Ins Co,* 411 Mich 267; 307 NW2d 53 (1981), our Supreme Court drastically altered the traditional rule by holding that in policies such as that at issue, which used the statutory clause limiting the insurer's liability in the case of fraud, MCL 500.2832; MSA 24.12832, only the claim of the insured who commits the fraud is barred. The innocent insured may recover fire insurance benefits under the policy without regard to the type of property interest involved. *Id.,* pp 276-277. However, the Court did not determine the percentage of the proceeds to which an innocent spouse was entitled.

In *Lewis v Homeowners Ins Co,* 172 Mich App 443; 432 NW2d 334 (1988), this Court discussed whether an innocent spouse who holds property as a tenant by the entireties may recover insurance

proceeds for more than one-half the amount of property damage, not exceeding policy limits, caused by the wrongful acts of the other coinsured spouse. This Court noted that the majority of jurisdictions which have addressed this issue have held either that the innocent spouse is precluded from any recovery or that the innocent spouse may recover only one-half of the insurance proceeds. *Lewis, supra,* pp 446-447, and cases cited therein. This Court adopted the following reasoning from *St Paul Fire & Marine Ins Co v Molloy,* 291 Md 139; 433 A2d 1135 (1981):

> "Since '[w]e have regarded the rights of husband and wife [to be] separate under the contract, . . . both logic and justice require that the amount recoverable be likewise allocated,' so that the innocent spouse be compensated for one-half the damages within the limits of the policy. [*Steigler v Ins Co of North America,* 384 A2d 398, 402 (Del, 1978).] Permitting recovery of more would necessitate reliance on the 'oneness' legal fiction of marital property which we rejected in determining that the parties here enjoy and assume several, not joint, contractual rights and obligations. Moreover, an award greater than one-half would allow the innocent spouse to recover in excess of that to which she would be entitled upon severance of the tenancy by the entirety, whether by divorce or other action of the parties. [291 Md 153-154.]" [*Lewis, supra,* p 447.]

This Court concluded that the above result was consistent with the Supreme Court's decision in *Morgan, supra,* which rejected application of a traditional "oneness" theory to a married couple to allow insurers to avoid all liability. On the other hand, it avoided a disparate resurrection of the "oneness" concept to allow full recovery to the innocent insured. *Lewis, supra,* p 449.

Under the particular facts of *Lewis,* allowing the spouse to collect only one-half of the insurance proceeds was clearly the correct result. In that case, the insured parties were legally separated when the husband intentionally burned the marital home. Later, a judgment of divorce awarded each spouse one-half of the proceeds from the sale of the home. The judgment also awarded each spouse the net proceeds received as a result of their respective efforts to collect on the fire loss. *Id.,* p 445. Clearly, the plaintiff wife was only entitled to one-half of the insurance proceeds.

Defendant would have us construe *Lewis* to establish a hard and fast rule that an innocent insured spouse may never collect more than one-half of the insurance proceeds when the damaged property is held by the entireties. However, we do not read the holding in *Lewis* to go so far as defendant suggests. In fact, the panel in *Lewis* expressly stated that it had adopted the above-stated rule "[f]or the case at bar." *Id.,* p 449. As the panel in *Lewis,* pp 447-449, appears to have recognized, we can easily envision circumstances under which equity would demand that the innocent insured spouse be allowed to collect one hundred percent of the proceeds. See *American Economy Ins Co v Liggett,* 426 NE2d 136 (Ind App, 1981) (innocent wife allowed to recover the full value of property damage caused by fire intentionally set by husband who died in the blaze). Therefore, we are unwilling to extend the rule enunciated in *Lewis* to the point desired by defendant.

On the other hand, we are equally unwilling to hold that the innocent spouse may always collect one hundred percent of the insurance proceeds regardless of wrongdoing by the other insured spouse which has barred his or her own claim under the policy. Such a rule would effectively

render the statutory fraud clause voiding coverage in cases of increase-of-hazard by the insured meaningless and unenforceable against married persons.

The rule adopted in *Lewis* is the rule generally followed by all jurisdictions that allow an innocent spouse any recovery. The rule clearly evolved from a universal rejection of the harsh traditional rule which barred claims of all insureds along with that of the wrongdoer. In attempting to form a more equitable rule, the various courts which have considered the issue have been forced to balance two equally valid but competing societal interests: preventing the guilty spouse from profiting through his wrongdoing while, nevertheless, protecting the innocent spouse from suffering from the other's guilt. We conclude that, under most circumstances, this is the correct and equitable result.

An insurer may validly limit the risks it chooses to assume if those limitations are clearly stated in the policy. See *Powers v Detroit Automobile Inter-Ins Exchange,* 427 Mich 602, 623; 398 NW2d 411 (1986), and *Consolidated Mortgage Corp v American Security Ins Co,* 69 Mich App 251, 256; 244 NW2d 434 (1976). The policy at issue clearly states that the insured's recovery is limited to "the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property . . . , nor in any event for more than the interest of the insured." Under the general rule adopted in *Lewis,* plaintiff Annette Ramon must be viewed as holding a one-half interest in the damaged property. Therefore, should this issue even be reached on remand,[2] her recovery is seemingly limited to

---

[2] We note that if defendant is unable to prove any wrongdoing by plaintiff Steven Ramon which voids his coverage under the insurance policies, the present issue will be rendered moot.

one-half of the total damage amount, not to exceed policy limits. We are unable to discern compelling equities in the present case that require a different result. However, we believe this is a question better left to the trial court on remand.

### III

Last, plaintiffs contend that the trial court incorrectly determined that defendant was entitled to set off the full amounts it paid to FHA and GMAC in satisfaction of their lienholders' interest against any recovery to which plaintiffs were entitled. We agree that the trial court incorrectly determined the issue of setoff, but not for the reasons advanced by plaintiffs.

There were two separate insurance policies at issue in the present case. One was the farmowner's policy, which insured plaintiffs' real and personal property against, among other things, fire damage. The other policy insured plaintiffs' motor vehicles. Both policies were issued by defendant. In determining the judgment amount to which plaintiff Annette Ramon was entitled, the trial court apparently added together the total property damage amount claimed by plaintiffs under both policies, divided it in half, and then allowed defendant setoff for the full amounts it had paid to lienholders under both policies. For the reasons discussed below, we conclude that this was an improper result because the damage amounts claimed by plaintiffs and the amounts of setoff to which defendant was entitled under each policy must be treated separately.

FHA was a named insured on the farmowner's policy which provided fire insurance coverage. The standard mortgage loss-payable clause gives the insurance proceeds to a mortgagee to the extent

that they are equal to or less than the mortgage debt and accords priority to insuring the mortgage debt over the insured mortgagor's claim. *Gibson v. Group Ins Co of Michigan,* 142 Mich App 271, 278; 369 NW2d 484 (1985); *Better Valu Homes, Inc v Preferred Mutual Ins Co,* 60 Mich App 315, 319; 230 NW2d 412 (1975). The insurer's payment of the existing mortgage balance satisfies its obligation to the mortgagee, while having no effect upon the insured's claim. However, the insured property owner has no claim to the portion of the insurance proceeds attributable to the unpaid balance of the mortgage and his claim for damage to the insured property is properly reduced by that amount. *Gibson, supra,* pp 278-279. Therefore, defendant was clearly entitled to set off the amount paid to FHA in satisfaction of the unpaid balance of the mortgage debt jointly and severally owed by plaintiffs. Regardless of the ultimate determination concerning plaintiffs' joint or individual entitlement to insurance proceeds, they may only collect any damage amount in excess of the mortgage balance within the policy limits.

However, we cannot agree that defendant may also set off the amount it paid under the automobile insurance policy it had issued to plaintiffs to satisfy the lien held by GMAC on plaintiffs' car against plaintiffs' recovery on the fire insurance policy. If the fire insurance policy had provided duplicative coverage for the automobile in question, defendant might have had a valid argument for at least a pro rata setoff of the amount paid to GMAC against the fire insurance proceeds. However, the farmowner's policy issued to plaintiffs by defendant specifically excluded automobiles from its coverage. Furthermore, while GMAC was named as a lienholder on the automobile insurance policy, it was not named as an additional insured or a

loss-payee under plaintiffs' fire insurance coverage. Therefore, we must conclude that defendant may only set off the amount paid to GMAC against any excess proceeds due to plaintiffs under the automobile insurance policy.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.