*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUTO CLUB GROUP INSURANCE
COMPANY,

UNPUBLISHED
July 2, 2019

       Plaintiff/Counterdefendant/Appellee
/Cross-Appellee,

v

No. 340446
Macomb Circuit Court
LC No. 2017-000443-CK

DANTE LOUIS, also known as JUSTICE DANTE
LOUIS EL,

       Defendant/Cross-
       Defendant/Appellant/Cross-
       Appellee,

and

ALVIA LOUIS EL,

       Defendant-Appellant,

and

LAKE PARK MANAGEMENT, LLC,

       Defendant/Counterplaintiff/Cross-
       Plaintiff/Appellee/Cross-Appellant.

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

      In this interpleader action involving the distribution of case evaluation proceeds awarded in a related matter, Dante Louis and Alvia Louis El appeal as of right from an order granting partial summary disposition in favor of Lake Park Management, LLC. Lake Park cross-appeals

an order denying payment of its attorney fees from the interpleaded funds. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2007, Dante purchased a home located in Warren, Michigan for $175,000, subject to a $50,000 mortgage held by Metro Finance. Dante obtained a homeowner's policy from Auto Club Group Insurance Company around the same time. The mortgage was later assigned by Metro Finance to Lake Park.

A fire subsequently occurred at the property in September 2014, at which time both Dante and Alvia, Dante's father, were living in the home.[1] After the fire, Dante submitted a claim for the dwelling damage, at replacement cost, for $287,719.33, a personal property claim of $29,724.21,[2] and various other coverage claims for a total claim of $321,927.25. On or about July 21, 2015, Auto Club denied the claim for several reasons. The Louises were later contacted by Randy Lesson, a Lake Park representative, seeking a report on the status of the claim. Lesson was informed that, despite Auto Club's denial of the Louises' claim, Lake Park could make a separate claim for the amount of the mortgage debt at the time of the fire. According to Auto Club's claim log, Lesson contacted Auto Club in October 2015 to make a claim for Lake Park. In the meantime, the Louises filed suit against Auto Club for wrongful denial of their claims in Macomb Circuit Court, Docket No. 2015-004248-CK (the underlying litigation). Lake Park was not a party to that lawsuit.

On February 12, 2016, Auto Club's adjuster requested the issuance of a check payable to Lake Park for the purpose of satisfying the mortgage debt. The check was delayed because of a dispute about the amount due at the time of the fire. The Louises contend that all parties were aware that Lake Park's separate mortgage claim was being adjusted for eventual payment during the spring and summer of 2016.

On September 13, 2016, the underlying litigation was submitted to case evaluation, resulting in a $90,000 award that was mutually accepted by the Louises and Auto Club. Shortly thereafter, Auto Club issued a $90,000 check made payable to the Louises, their attorney, and Lake Park. When the Louises requested Auto Club issue a new check without Lake Park as a payee, Auto Club asserted that it was contractually obligated to include Lake Park. Auto Club contended, for the first time, that the case evaluation award included payment of Lake Park's mortgage payoff claim. When the Louises' counsel refused to accept the check because of Lake Park's inclusion as a payee, Auto Club filed the instant interpleader action, naming the Louises and Lake Park as defendants. The trial court entered an order requiring Auto Club to deposit the $90,000 case evaluation award with the court and ordering Lake Park to file all cross-claims and counterclaims against any party within seven days.

---

[1] The insurance policy defined "Insured Persons" to include individuals named on the declaration certificate and any resident relative. Thus, both Dante, as the named insured, and Alvia, as a resident relative, were considered "Insured Persons" under the policy.
[2] The Louises later claimed personal property loss in the amount of $113,054.43.

-2-

Lake Park filed a cross-claim against Dante, alleging that Dante was in default under the mortgage and related note and had breached his contractual obligations in other respects. Lake Park sought a judgment against Dante in the amount of the mortgage indebtedness—then exceeding $52,600—and requested that the interpleaded funds be held in constructive trust for Lake Park's benefit. Lake Park also filed a counterclaim against Auto Club for breach of contract on the basis of Auto Club's failure to make payment to Lake Park in the amount of the mortgage balance at the time of the fire.

The parties eventually filed competing dispositive motions concerning their respective rights and the distribution of the interpleaded funds. At the hearing on the motions, the Louises argued that Lake Park had a separate claim for the mortgage debt, which remained pending throughout the underlying litigation and that, at the time of the case evaluation, "everybody understood" that the mortgage claim would be paid. The Louises maintained that if Lake Park's mortgage claim had been considered in case evaluation, the evaluation recommendation would have been $50,000 higher. The trial court rejected the Louises' argument, reasoning that Lake Park's separate claim had not been paid and only existed contingent upon Auto Club not paying the Louises' principal claim. The court further reasoned that once Auto Club paid the Louises, Lake Park's separate claim disappeared so as to ensure that it could not recover twice. The Louises noted that their claim had not been limited to dwelling damages, but the trial court stated that whatever had been compromised through case evaluation, Auto Club was paying pursuant to the policy. The Louises requested an additional hearing to determine the allocation of the case evaluation award between the dwelling loss, personal property loss, alternative living expenses, attorneys, and public adjusters, but the trial court denied the request, stating,

> No, of the—that's between the Louis's [sic] and how they divide their personal property loss versus their real property loss, . . . that's up to them.

> As far as the case evaluation award, the lien from the mortgage company is priority on the property and they are to be paid the principal, interest, late fee from the proceeds of the case evaluation, and they are discharged from this litigation, as is Auto Club.

The trial court entered three orders on August 7, 2017. The first order granted Lake Park's motion for summary disposition in part, awarding Lake Park $54,450.30 and denying its request for attorney fees from the interpleaded funds. The second order granted Auto Club's motion for summary disposition and dismissed it from the case. The third order denied the Louises' motion for distribution of the case evaluation proceeds. The trial court also denied the Louises' subsequent motion for reconsideration. The Louises filed their appeal and Lake Park filed their cross-appeal. The trial court subsequently held a hearing, after which it granted Lake Park $20,000 in attorney fees and $222.08 in costs, but reiterated that the attorney fees and costs were not payable from the interpleaded funds.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition. *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). When a motion is granted under MCR 2.116(C)(10), this Court reviews the entire record in the light most favorable to the nonmoving party to determine if a genuine issue of material fact precluding judgment exists. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 713; 706 NW2d 426 (2005). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

This Court also reviews de novo questions involving the proper interpretation or legal effect of a contractual clause, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005), and the interpretation of an insurance policy. *Royal Prop Group*, 267 Mich App at 713. To ascertain the meaning of a contract, courts give the words in the contract "their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. "[I]nsurance policies *are* subject to the same contract construction principles that apply to any other species of contract." *Id.* at 461.

## III. DISTRIBUTION OF THE INTERPLEADED FUNDS

As an initial matter, we note that both Auto Club and Lake Park take issue with the fact that the Louises did not appeal the underlying litigation and, therefore, assert that the Louises are precluded from seeking most, if not all, of their requested relief in this case. "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding." *Workers' Compensation Agency Dir v MacDonald's Indus Prods, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014). The underlying litigation was a separate action from which no appeal was taken. Consequently, we cannot consider the propriety of the case evaluation award or whether the award should have been set aside.

Instead, although framed somewhat differently by the parties, the primary issue we are confronted with is whether the case evaluation award in the underlying litigation constituted a complete settlement of all claims for loss arising from the September 2014 fire—including Lake Park's mortgage payoff claim—or whether the award was limited to insurance proceeds to which the Louises would be entitled. In *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 555; 640 NW2d 256 (2002), our Supreme Court construed the court rules governing case evaluation and held that a litigant may not submit less than all of his or her claims to the case evaluation panel. Mutual acceptance of case evaluation resolves all of the litigants' claims in the action and concludes the case as to those parties. *Id*. at 555-557. Thus, the respective entitlement of Lake Park and the Louises to the case evaluation proceeds turns on a determination of the party to whom the mortgage payoff claim belonged. To the extent that the mortgage payoff fell within the scope of claims the Louises could properly assert, their acceptance of the case evaluation recommendation effectively settled Lake Park's right to recover from Auto Club directly. Lake Park would, therefore, be entitled to any portion of the award attributable to dwelling damage up to the balance of the mortgage debt. On the other hand, if Lake Park's rights under the insurance policy belonged to it alone, the Louises

-4-

acceptance of the case evaluation award could not have settled a claim rightfully belonging to another party, and Lake Park would not be entitled to any portion of the case evaluation award.

The Louises assert that they are the sole beneficiaries of the interpleaded funds and that the trial court erred by permitting Dante's outstanding mortgage balance to be paid to Lake Park from the interpleaded funds. Auto Club has asserted from the time it first issued the settlement check pursuant to the case evaluation award that, under the terms of the insurance policy, it was required to include Lake Park as a payee. Lake Park argues that it is entitled to the interpleaded funds because they constitute insurance proceeds or miscellaneous proceeds under the mortgage. The Louises contend that MCR 2.403 controls the outcome of this interpleader action, rather than either the insurance policy or the mortgage.

The Louises' argument concerning MCR 2.403, the court rule governing case evaluation proceedings, is misplaced in light of the procedural posture of this appeal. As already noted, no appeal was taken from the underlying litigation. Thus, whether Auto Club could lawfully include Lake Park as a payee on the settlement check in that case is not an issue properly before this Court. Instead, we must accept that the Louises settled their insurance claim for $90,000 and focus on the proper distribution of the settlement proceeds in the interpleader action.

Under the terms of the mortgage, Dante agreed to keep the improvements on the property insured against loss by fire by procuring an insurance policy that included a standard mortgage clause. The mortgage further provided that, in the event of loss, "[i]f the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower."[3] As required by the mortgage, Dante secured an insurance policy from Auto Club containing the following clause:

> Loss shall be payable to any mortgagee named on the Declaration Certificate to the extent of their interests and in the order of precedence. Mortgagee includes a trustee under a trust deed or a contract seller under a land contract.

---

[3] The mortgage calls for similar treatment of "Miscellaneous Proceeds," meaning "any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property . . . ." Under § 11 of the mortgage, miscellaneous proceeds are assigned to the lender and, to the extent that the restoration or repair of the property is not economically feasible or the loss involved total destruction of the property, the miscellaneous proceeds are "applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower." Given the common treatment of insurance proceeds and miscellaneous proceeds under the mortgage, we find the Louises' attempt to distinguish the case evaluation award from "insurance proceeds" unpersuasive.

We will:

    a.    protect the mortgagee's interests in the insured building. This protection will not be invalided by any act or neglect of any insured person, breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions . . . .

The parties agree that the above-quoted provision constitutes what is commonly known as a standard mortgage clause. When a standard mortgage clause is included in an insurance commitment, courts treat the policy as involving two contracts of insurance, "one with the lienholder and the insurer and the other with the insured and the insurer." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 384; 486 NW2d 600 (1992). The insurer agrees to insure a single property against specified losses and, through the standard mortgage clause, undertakes separate contractual duties governing to whom the proceeds of the policy are payable in the event of loss. *Better Valu Homes, Inc v Preferred Mut Ins Co*, 60 Mich App 315, 319; 230 NW2d 412 (1975). The standard mortgage clause "gives the proceeds to the mortgagee to the extent that they equal or are less than the mortgage indebtedness of the property, and it gives the mortgagee's claims to the proceeds priority over the competing claims to them of the mortgagor . . . ." *Id*. "[I]n other words, the clause gives priority to insuring the mortgage debt." *Id*. Furthermore, because the lienholder has separate and distinct contractual rights, "a lienholder is not subject to the exclusions available to the insurer against the insured," and "the lienholder's interest in the insured's property will not be avoided by any acts, representations, or omissions of the insured." *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 524; 847 NW2d 657 (2014) (quotation marks and citations omitted).

In granting summary disposition in favor of Lake Park, the trial court reasoned that Lake Park's claim under the standard mortgage clause was contingent upon Auto Club's denial of benefits to the Louises. We disagree. Caselaw makes clear that the respective rights of the insured and the lienholder under an insurance policy containing a standard mortgage clause are distinct and separate. *Foremost*, 439 Mich at 384, 389; *Wells Fargo Bank*, 304 Mich App at 524; *Better Valu Homes*, 60 Mich App at 319. Accordingly, the Louises' acceptance of case evaluation could not have settled Lake Park's independent right to payment under the insurance policy. Indeed, "[t]he insurer's payment of the existing mortgage balance satisfies its obligation to the mortgagee, while having no effect upon the insured's claim." *Brown v Frankenmuth Mut Ins Co*, 187 Mich App 375, 384; 468 NW2d 243 (1991), quoting *Ramon v Farm Bureau Ins Co*, 184 Mich App 54, 67; 457 NW2d 90 (1990) (quotation marks omitted). Likewise, "the insured property owner has no claim to the portion of the insurance proceeds attributable to the unpaid balance of the mortgage . . . ." *Ramon*, 184 Mich App at 67. For that reason, when an insurer issues payment to a mortgagee while denying the claim of the insured, the insurer is entitled to set off the amount paid to the mortgagee in the event it is subsequently determined that the insured is entitled to recover for damage to the property. *Brown*, 187 Mich App at 384.

Notwithstanding an insurer's general setoff rights, Auto Club is not entitled to a setoff under the unique circumstances of this case. In *Ramon*, 184 Mich App at 57, the plaintiffs obtained an insurance policy from the defendant insurer protecting their residence, personal property, farm personal property, and barn against loss by fire. The policy also afforded

-6-

protection under a standard mortgage clause to an entity that held liens against the barn and farm personal property. *Id*. at 57, 66-67. The defendant issued a second policy insuring the plaintiffs' motor vehicle, which similarly protected the interest of a lienholder. *Id*. at 57. After a fire caused damage to the plaintiffs' barn, personal property, and vehicle, the defendant denied the plaintiffs' claims on the basis of suspected arson and fraud, but made payments to the lienholders in satisfaction of their respective interests in the damaged property. *Id*. at 57-58. This Court later determined that the plaintiff wife was not barred from receiving insurance proceeds under the fire policy on the basis of her husband's alleged wrongdoing. *Id*. at 62-66. We further held that the defendant could not set off amounts paid to a lienholder under the automobile insurance policy against the amounts owed to the innocent plaintiff under the fire policy. *Id*. 67-68. The vehicle was specifically excluded from the fire policy, such that the automobile lienholder was not entitled to insurance proceeds under that policy. *Id*. The defendant could, however, set off the amount paid to the automobile lienholder against any excess proceeds due to the innocent plaintiff under the separate motor vehicle policy. *Id*. We gather from this result that the insurer's setoff rights are limited to payments compensating for the same insured loss.

In pertinent part, § 5 of Dante's mortgage agreement with Lake Park provided:

> **Property Insurance.** Borrower shall keep *the improvements now existing or hereafter erected on the Property* insured against loss by fire . . . and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. . . .
>
> \* \* \*
>
> All insurance policies required by Lender and renewals of such policies . . . shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. . . . If Borrower obtains any form of insurance coverage, not otherwise required by Lender, *for damage to, or destruction of, the Property*, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.
>
> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2. [Emphasis added.]

The mortgage also defined the term "Property" by reference to a legal description for Dante's Warren property, together with "all the improvements now or hereafter erected on the property . . . ." Under the plain language of these provisions, Dante was only obligated to obtain insurance covering damage to the real property and its improvements. Similarly, under the insurance policy, loss was payable to Lake Park as the mortgagee only "to the extent of [its] interests," and the mortgage only granted Lake Park a security interest in the real property and improvements. Thus, Lake Park's entitlement to insurance proceeds did not extend to money

paid by Auto Club for the Louises' other types of losses, namely, loss of personal property and alternative living expenses. To the extent that the case evaluation award included amounts for anything other than loss of the real property and improvements, i.e., dwelling loss, Lake Park could not claim priority over those funds.

The case evaluation award, however, makes no distinction as to the losses for which payment would be made. Moreover, "[t]he work product and case files of a mediator or center and communications relating to the subject matter of the dispute made during the dispute resolution process by a party, mediator, or other person are confidential," MCL 691.1557(1), and the court rules provide that case evaluation briefs and summaries, as well as statements of the attorneys in the context of case evaluation, are inadmissible in any court or evidentiary proceeding, MCR 2.403(J)(4). See also *Kitchen v Kitchen*, 231 Mich App 15, 19-20; 585 NW2d 47 (1998) (discussing limited exceptions to general inadmissibility of case evaluation summaries). Given the general inadmissibility of evidence regarding case evaluation proceedings and the parties' failure to waive the confidentiality of those proceedings, see MCL 691.1557(1)(a), *Kitchen*, 231 Mich App at 20, there is little, if any, evidence from which it can be determined whether any, all, or none of the case evaluation award was intended as compensation for the dwelling loss. Because it is impossible to determine on the basis of anything more than speculation what portion of the award was attributable to dwelling loss, Auto Club is not entitled to set off any payment it may be obligated to make to Lake Park against the mutually accepted case evaluation award.

We disagree with the notion that Dante, as the insured, bore the burden to make certain any award indicated whether it included money for the dwelling loss. Admittedly, as the mortgagor, Dante was ultimately responsible for payment of the promissory note secured by the mortgage. But it does not follow from that reality that Dante was required to ensure Lake Park's rights under the separate contract between Lake Park and Auto Club were protected, though such action would have been prudent in order to avoid the risk of remaining liable for the mortgage debt should Auto Club lawfully refuse payment to Lake Park. Auto Club, on the other hand, undertook a contractual obligation to make loss payable to Dante's mortgagee, Lake Park, to the extent of its interest. And for the reasons already explained, Auto Club could not satisfy this obligation by simply adding Lake Park as a payee on a settlement check issued to the Louises where there is no indication regarding the allocation of the award between dwelling loss, personal property loss, and alternative living expenses.

Furthermore, it is noteworthy that Auto Club had been in the process of adjusting and issuing payment on Lake Park's claim for months preceding the submission of the Louises' claim to case evaluation. Although the Louises' counsel communicated with a representative of Lake Park regarding the status of Lake Park's claim throughout the underlying litigation, the Louises were not directly involved in the adjustment process, leaving Auto Club in a far superior position to know if and when the claim would be processed and to advise the case evaluation panel of any associated setoff right Auto Club might have had. If Auto Club was concerned

about the risk of exposure to duplicative liability for dwelling loss,[4] it should have moved for leave to make Lake Park a party to the underlying litigation or made certain that the case evaluation panel took Auto Club's setoff right into account in reaching the recommended award.

Because we conclude that the mutually accepted case evaluation award did not include Lake Park's separate mortgage payoff claim and that Auto Club is not entitled to set off any payment it may be required to make to Lake Park pursuant to the standard mortgage clause, the trial court erred by granting summary disposition in favor of Auto Club and Lake Park and ordering that the mortgage balance be paid from the interpleaded funds. We therefore reverse the trial court's orders granting such relief and remand for further proceedings consistent with this opinion with respect to Lake Park's cross-claim against Dante and counterclaim against Auto Club. Having determined for the foregoing reasons that the Louises are entitled to the entirety of the interpleaded funds, subject to the charging lien of their counsel, we need not address the Louises' remaining claims of error.

## IV. LAKE PARK'S CROSS APPEAL

On cross-appeal, Lake Park argues that the trial court erred by refusing to direct payment of Lake Park's attorney fees and costs from the interpleaded funds because, under the terms of the mortgage, the costs incurred by Lake Park to protect its interest in the secured property became part of the secured debt and, therefore, payable from insurance or miscellaneous proceeds. We disagree.

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). Lake Park moved for payment of its attorney fees by the Louises in reliance on § 9 of the mortgage, which provides, in pertinent part, as follows:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . ., or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: . . . (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . .

---

[4] We further note that even if we were to assume that the entire $90,000 case evaluation award was attributable to dwelling loss and that Auto Club remained obligated to pay the approximately $50,000 balance of the mortgage as of the date of loss, Auto Club's total payment for dwelling loss would still be well below the $199,200 policy limit applicable to dwelling loss.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate and from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

As Lake Park observed in its briefing before this Court, the Louises have not appealed the trial court's award of $20,000 in attorney fees and $222.08 in costs in favor of Lake Park. Accordingly, we will not review the trial court's award of attorney fees and costs or determination as to the reasonableness of the amount awarded, and our conclusion regarding the proper distribution of the interpleaded funds does not affect the trial court's order concerning attorney fees.

However, our disposition of the primary appeal demonstrates that Lake Park is not entitled to relief in connection with its cross-appeal. As explained earlier in this opinion, Lake Park's claim to insurance proceeds is superior to that of the Louises to the extent of its interest in the secured property, but only as it relates to insurance proceeds attributable to loss to the "property," i.e., the real property and improvements. Because the case evaluation award is ambiguous regarding what, if any, portion of the award is attributable to the Louises' dwelling loss claim, Lake Park has no direct right to receive the case evaluation award in satisfaction of the secured debt, including any amounts that became payable under § 9.

The mortgage also provides that "[a]ll Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender." Like its treatment of insurance proceeds, the mortgage further states that "[i]f the restoration or repair [of the damaged property] is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower." But again, the manner in which the mortgage defines the relevant term belies Lake Park's position. According to the mortgage,

> 'Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than the insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

If not considered insurance proceeds, the only form of compensation, settlement, award, or proceeds that could arguably be involved in this case would be payment for "damage to, or destruction of the Property[.]" But for the reasons already explained, the ambiguous case evaluation award is not clearly attributable to the Louises' dwelling loss. As such, it does not fall within the scope of miscellaneous proceeds as defined by the mortgage. We therefore affirm the trial court's ruling that Lake Park could not recover the awarded attorney fees and costs from the interpleaded funds.

## IV. CONCLUSION

In sum, the case evaluation award mutually accepted by the Louises and Auto Club did not include Lake Park's separate mortgage payoff claim, and Auto Club is not entitled to set off any payment it may be required to make to Lake Park pursuant to the standard mortgage clause. We reverse the trial court's orders granting summary disposition in favor of Auto Club and Lake Park and ordering payment of the mortgage balance from the interpleaded funds. We affirm the trial court's order granting Lake Park attorney fees and costs.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica