*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARILYN WILLIAMS,

        Plaintiff-Appellant,

and

MERCYLAND HEALTH SERVICES and
GREATER LAKES AMBULATORY SURGERY
CENTER,

        Intervening Plaintiffs,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
January 28, 2021

No. 349903
Wayne Circuit Court
LC No. 17-015281-NF

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

K. F. KELLY (*dissenting*).

I respectfully dissent. Because I conclude that plaintiff's request for no-fault benefits did not fall within the parameters delineated in *Meemic Ins Co v Fortson*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158302), I would affirm the trial court's order granting summary disposition in favor of defendant. Moreover, I would affirm based on the factual and procedural background of this case.

## I. BASIC FACTS AND PROCEDURAL HISTORY

I think it is important to note the factual and procedural background of the instant case; as noted it arises from a motor vehicle accident. In early-September 2016, plaintiff was in her vehicle, stopped at a red light, when she was rear-ended by another driver. Her vehicle was pushed into

the vehicle stopped in front of her. Plaintiff drove her vehicle to the nearby police department to file a police report.[1]

After the accident, plaintiff asserted she was in pain and in shock. For the following three or four days, plaintiff stayed in bed, and her daughter helped her to the bathroom and with meals. Plaintiff's daughter took her to an urgent care, but they were referred to a hospital. Plaintiff claimed that she suffered multiple injuries in the accident, including headaches, ear ringing, and pain in the neck, shoulders, arms, legs, and lower back. She was given controlled substances for pain management and prescribed physical therapy. Plaintiff had a policy of insurance with defendant and made a claim for reimbursement of medical expenses, lost wages, transportation services, replacement services, and attendant care arising from her injuries.

Plaintiff filed suit against defendant, alleging that certain benefits were paid, but had since been terminated, and an unreasonable refusal to pay no-fault benefits in accordance with her policy. Defendant claimed that plaintiff was barred from recovery of benefits through fraudulent statements or misrepresentations, which voided the insurance policy.

Plaintiff testified that she stopped working at AT&T in 2012, after her doctor placed her on disability because of complications from diabetes and high blood pressure. In 2012, plaintiff applied for social security disability benefits, and she was approved for approximately $1880 in monthly benefits in 2013. At the time of the accident, plaintiff worked for the State of Michigan acting as a caregiver for an individual. This work included bathing, dressing, cleaning, meal preparation, and shopping for the individual. Plaintiff worked eight hours a day and initially earned $300 a month, but her final rate of pay was $600 a month. However, plaintiff could not continue this employment because her doctors disabled her from working after the accident.

At the time of her deposition in September 2018, plaintiff testified that she still attended physical therapy three times a week, visited a pain doctor once a month, and had injections every two to three months. Although plaintiff could now perform basic hygiene and meal preparation, she was restricted from performing household duties.

In 2019, plaintiff was deposed in an unrelated motor vehicle accident case[2] for services she provided to Steven W Harmony, Sr. At the start of her deposition, plaintiff acknowledged that she had been deposed previously. When asked if she was ever a party to a lawsuit, plaintiff answered, "No." When questioned about the reason she was deposed, she was initially evasive. Plaintiff eventually answered that she was deposed in a "private case," arising from her being injured, and she was the plaintiff in an ongoing action against an insurance company. Plaintiff testified that she received attendant care and replacement services, but those services stopped in October 2018.

Plaintiff began working for Harmony in November 2018, and performed case management services for $200 an hour. During the deposition, plaintiff was questioned about her credentials

---

[1] Plaintiff testified that she was able to drive her vehicle after the accident, but it sustained both front and rear-end damage. Although plaintiff was stopped at the time of the crash, there was no estimation of the speed of the truck that struck her. However, plaintiff stated that the vehicle's airbag did not deploy in the accident. Nonetheless, plaintiff testified that her vehicle was "totaled."

[2] The case was filed in Macomb Circuit Court, assigned lower court number 2018-002406-NF, and titled *Steven W Harmony, Sr v State Farm Mut Auto Ins Co*.

and past work experience in providing case management services to justify her hourly wage. Plaintiff testified that she performed and was compensated for case management and attendant services for Thessalonia Reed[3] for a "couple of years" before his death in 2017, which included making and taking him to appointments and preparing meals. She also testified that she was employed part-time from 2016 to 2019 for a party planning company. Additionally, plaintiff testified that she determined the reasonable rate of $200 an hour in light of her "research," but could not recall where she located this information. Although plaintiff was acting as Harmony's case manager, she did not review his medical records before the accident or learn of pre-existing medical conditions. Plaintiff did not receive any special training to act as a case manager and did not know if it was recommended that Harmony acquire a case manager. She also did not know if Harmony was receiving attendant care services when she started as case manager. Plaintiff insisted that she was privately paid $200 an hour for case management services by Reed and that she had a record of the payment.[4]

Harmony confirmed that plaintiff was his case manager since November 2018. They determined that she would be paid $200 an hour in light of her experience, calls to case management companies, and a conversation with a case manager at a Binson's store. Plaintiff scheduled Harmony's appointments and discussed his living situation because he was falling and had difficulty maneuvering stairs. She came over every day for four hours during which they spoke, and she talked on the phone. Plaintiff drove him "wherever he needed to go," including to doctor appointments and the grocery store. He also accompanied her when she drove other people's children to and from school for "extra money." To his knowledge, plaintiff did not have any other jobs in addition to case management and child transportation, but she was seeking election to her local city council. Harmony testified that plaintiff had no physical disabilities and was "in good shape."

In light of the deposition testimony, defendant asserted that the fraud provision of the policy was applicable to preclude plaintiff's recovery of benefits. Defendant also submitted that plaintiff made material misrepresentations about the extent of her injuries and ability to drive and, as a result, plaintiff's policy was void.

Plaintiff argued the fraud provision did not apply because her statements in the Harmony case were separate and unrelated to her claim for benefits. Plaintiff asserted that even if her statements in the Harmony case pertained to her no-fault claim, her policy was not void because there was a question of fact as to whether they could be deemed fraudulent statements, and the trial court could not assess her credibility when deciding the summary disposition motion. Importantly here, plaintiff filed an affidavit, stating she "was removed from disability of work and employment" by her treating physicians in November 2018. Plaintiff revealed that her prior case management experience was for her father, Thessalonia Reed, and that he never paid her $200 an hour and did not have the financial resources to pay her. She explained that she made the statement in her deposition in the Harmony case "to support the amount" that she billed. Further, she worked

---

[3] In her deposition, plaintiff did not disclose that Reed was her father.

[4] When asked if she paid taxes on those case management services, plaintiff asked if counsel was trying to get her in trouble. Additionally, plaintiff gave a description of the difference between attendant care and replacement services. After she answered, plaintiff asked counsel if she was right or wrong.

for her daughter's party planning company on a voluntary basis and never received any compensation.

The trial court noted an affidavit could not rebut the testimony, and plaintiff's failure to be forthright created the problem. The trial court concluded that there was no genuine issue of material fact and granted summary disposition to defendant under MCR 2.116(C)(10). I agree with the trial court.

## II. ANALYSIS
### A. *MEEMIC*

Although the majority opinion concludes that this case presents a legal question solely controlled by the *Meemic* decision, I disagree. In *Meemic*, Justin Fortson (Justin) was seriously injured when he fell from the hood of a moving vehicle in September 2009. As a result of brain damage, Justin required constant supervision, and his doctors prescribed long-term care. Instead of sending Justin to a brain-injury rehabilitation center, his parents, the codefendants Richard and Louise Fortson, decided to provide 24-hour attendant care themselves and were paid $11 an hour. At the time of the accident, the parents were the named insureds in the policy, and Justin was covered as an "insured person" under the policy's resident relative provision and MCL 500.3114(1). *Meemic*, ___ Mich at slip op 2. Between October 2009 and October 2014, the parents submitted bills for attendant care and Meemic paid them. However, in May 2013, Meemic conducted an investigation and learned that between September 2012 and July 2014, Justin was jailed for 233 days and in a drug program for 78 days. Nonetheless, the parents billed Meemic for attendant care for that time period. Consequently, Meemic filed suit against the parents and Justin, seeking to void the policy pursuant to the antifraud provision and relief from continuing to pay Justin's claim. The antifraud provision provided that it was void "if any insured person" has intentionally concealed or misrepresented any material fact or circumstances relating to the insured, the application, or any claim made under it. *Id*. at 2-3.

Meemic filed suit alleging breach of contract, fraud, common-law and statutory conversion, and unjust enrichment. The Fortsons filed a counterclaim for past and future attendant care benefits. Meemic's initial request for summary disposition was denied premised on the innocent third-party rule, but after the doctrine was overruled by our Supreme Court, the trial court granted summary disposition. This Court reversed, concluding that the fraud did not occur in the procurement of the policy, and the fraud did not affect the validity of the contract. Additionally, it held that the policy's antifraud provision was invalid because it would allow Meemic to circumvent the payment of statutorily mandated benefits. *Id*. at 3-5.

Our Supreme Court noted that, in the context of mandatory no fault coverage, a common-law fraudulent procurement defense may be raised. *Id*. at 8-9. However, the Court went on to clarify that "a provision in an insurance policy purporting to set forth defenses to mandatory coverage is only valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated." *Id*. at 10-11. Thus, the Court concluded that the appropriate question was whether a contract-based fraud defense was available by statute or if it was a common-law defense that had not been abrogated. That is, "[i]f the contractual defense is properly derived from either source, it is valid; if not, then it goes beyond what Meemic can assert to avoid mandatory coverage and is invalid and unenforceable." *Id*. at 11.

Our Supreme Court noted that fraud was not provided for in the no-fault act. With regard to the common-law, the Court stated that a contract obtained as a result of fraud only allowed the defrauded party to seek rescission or avoidance of the contract related to the inducement. *Id*. at 11-13. However, with regard to *postprocurement* fraud, the Court noted that a contractual provision that rescinds a contract because of postprocurement fraud was not invalid in all circumstances. Rather, postprocurement fraud allowed for rescission of a contract when a party failed to perform a substantial part of the contract or one of the essential terms. *Id*. at 14. However, mere breach generally did not allow a party to avoid a contract at common law because the facts that warrant rescission must have existed at the time the contract was made. *Id*.

The *Meemic* Court noted that the sweeping antifraud policy at issue would terminate Justin's benefits "on the basis of the fraudulent activity of anyone who happened to be in or out of the car and entitled to claim under the policy, and the activity could occur years after the policy was entered and relate to any claim or simply to the 'insurance.'" Because the fraudulent activity by the parents did not induce or deceive Meemic into entering into the policy, Meemic did not rely on any misrepresentations at the time the insurance policy was executed in 2009. "In short, Meemic's contract-based fraud defense fails because it is not the type of common-law fraud that would allow for rescission." *Id*. at 15-17.

However, the facts in *Meemic* are distinct from this plaintiff. In *Meemic*, Justin's entitlement to statutory benefits would have been controlled by actions of others; his parents could have caused his benefits to cease. However, in this case, plaintiff, not the insurance company, initiated the suit to recover no-fault benefits. In response, the insurance company sought to avoid paying benefits on the basis of fraud. This plaintiff's entitlement to benefits is controlled by her own actions and pertains to her own submissions regarding services received. Indeed, the *Meemic* Court acknowledged this factual scenario and declined to include it in the *Meemic* holding.

Specifically, in *Meemic*, *id*. at 12 n 10, the Court noted that fraud by the insured did not preclude relief to the insurance company, stating:

> That is not to say that the no-fault act leaves insurers without recourse. An insurer can reject fraudulent claims without rescinding the entire policy. See generally *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 655; 899 NW2d 744 (2017). In addition, an insurer may receive attorney fees 'in defending against a claim that was in some respect fraudulent or so excessive as to have no reasonable foundation.' MCL 500.3148(2). And, in certain narrow circumstances, an insurer can seek to cancel the policy under MCL 500.3220.

More importantly, the *Meemic* Court noted that it was not addressing the circumstance where the fraud occurred by the individual who was both the policyholder and the claimant and the fraud pertained to the claim for proof of loss by stating:

> The Court of Appeals has upheld a fraud-exclusion provision when the fraud related to proof of loss on a claim rather than fraud in the procurement or execution of the policy. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014); but see *Shelton*, 318 Mich App 648, 652-655; 899 NW2d 744 (2017) (limiting *Bahri* to when the claimant is an insured under the defendant's policy). A

-5-

leading treatise has explained that "to avoid a policy on the ground of fraud or false swearing in the proof of loss, the statement in question must be material." 13A Couch, Insurance, 3d (2019 rev ed), section 197:18, pp 48-49. In this case, however, because there is no allegation of fraud in relation to Justin's claim for benefits, the Court need not address the issue of whether and to what extent fraud related to proof of loss can justify voiding the policy. Moreover, because this case involves fraud by someone other than the claim beneficiary, the Court need not address whether a clause voiding a policy for postprocurement fraud would be valid as applied to fraud by an individual who is *both* a policyholder and the claim beneficiary. [*Id*. at 16 n 15 (emphasis in original).][5]

In *Meemic*, Justin would have been denied statutory benefits because of the purported deception by his parents. Thus, in light of the sweeping anti-fraud provision, his entitlement to statutory benefits would have been voided by actions or individuals beyond his control when there was no allegation of collusion. However, in the present case, plaintiff was both the policyholder and the claimant. She submitted a request for replacement services, contending that she could not perform basic tasks and required assistance, but then claimed to provide replacement services for her father and had part-time employment with her daughter in an unrelated lawsuit. Further, she chauffeured children to school for extra money. Plaintiff did not recant providing services to her father, working for her daughter, and did not deny driving children to school for money. She only denied receiving *payment* from her father and daughter. Thus, plaintiff's claim does not pertain to procurement fraud in obtaining the policy or fraud committed by others. Rather, it addresses postprocurement or proof of loss fraud pertaining to her policy and involves her own fraudulent claim for benefits including replacement services when she admittedly was performing replacement services for others.

The purpose of the no-fault act is "to provide accident victims with assured, adequate and prompt reparations at the lowest cost to both the individuals and the no-fault system." *Williams v AAA Michigan*, 250 Mich App 249, 257; 646 NW2d 476 (2002). In the no-fault act, insurance companies are required to provide first-party insurance benefits known as personal protection insurance benefits (PIP) benefits for certain expenses and losses. MCL 500.3107; MCL 500.3108. The four general categories of PIP benefits are survivor's loss, allowable expenses, work loss, and replacement services. *Johnson v Recca*, 492 Mich 168, 173; 821 NW2d 520 (2012). However, to ensure that there is no abuse of the no-fault act and unduly costs added to its maintenance that price some insureds out of the system, an insured must submit an accurate sworn statement of loss. A false swearing of loss is fraudulent conduct that must be addressed. This case presents the unique scenario where plaintiff, through counsel, admittedly lied about the need for attendant care and replacements services when examined in light of her provision of those same services to another individual. In my view, *Meemic* expressly exempted this scenario from its holding.

---

[5] The majority opinion recognizes the *Meemic* Court's reservations regarding the decision's application, but essentially concludes that the broadly expressed holding effectively negates this language. In my view, if the *Meemic* Court intended such a broad view, it simply would have removed those footnotes and not expressed those reservations.

## B. FRAUD

Contrary to the majority opinion, I would apply the facts and circumstances to the policy language to conclude that the trial court properly granted summary disposition in light of false or fraudulent statements pertaining to plaintiff's claim for no-fault benefits.

A fraud-exclusion provision in an insurance policy may be enforced when the fraud relates to proof of loss on a claim. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014).[6] When clear and direct evidence demonstrates that a plaintiff did not require replacement services, her claim for personal injury protection (PIP) benefits is precluded. *Id*. at 426.

In the present case, plaintiff contends her testimony given in the Harmony case was unrelated to her own claim for no-fault benefits pursuant to her insurance policy issued by defendant, and therefore, it did not trigger the fraud exclusion in her policy. The fraud provision in plaintiff's policy states:

C. Fraud and Concealment

The entire policy will be void if, whether before *or after a loss*, you, any family member, or any insured under this policy has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements;

relating to this insurance or to a loss to which this insurance applies. (Emphasis added.)

Irrespective of the fact that the issues differed between plaintiff's cause of action for no-fault benefits and her testimony in the Harmony case, plaintiff was deposed in both cases and gave conflicting sworn testimony directly related to her wages and abilities during the time she sought

---

[6] I conclude that *Meemic* did not address this factual circumstance and does not present the opportunity for this Court to revisit and essentially overrule the *Bahri* decision. This Court held long ago that "[f]alse swearing by an insured will void an insurance policy." *Ramon v Farm Bureau Ins Co*, 184 Mich App 54. 59; 457 NW2d 90 (1990). Indeed, the fraud exclusion may be applied against the policyholder pursuant to their contractual agreement. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 652-655; 899 NW2d 744 (2017). Additionally, rescission of a contract is not necessary to maintain an action for fraud and deceit arising from the agreement because "such action is not based upon the contract but upon the tort committed by means of false and fraudulent representations." *Dinius v Bolibrzuch*, 270 Mich 618, 620; 259 NW 156 (1935) (citation omitted).

no-fault benefits for lost wages, transportation services, and replacement services from defendant. Plaintiff advised defendant that she was unable to work,[7] but in her deposition in the Harmony case, she testified that she provided case management services to Reed and worked part-time as a party planner. Further, plaintiff represented to defendant she was unable to drive and required replacement services for household duties, yet according to Harmony, she drove almost daily, drove children to school for compensation, and showed no signs of physical disability. Indeed, plaintiff's mobility was necessary to provide daily case manager services to Harmony. Harmony's deposition testimony corroborated plaintiff's testimony that she provided services to him despite her claims that she required services from others. Because plaintiff's testimony in the Harmony case demonstrated that she was employed and providing services to a family member when she claimed to be disabled and in need of her own household services, plaintiff made false statements relating to a loss to which the policy of insurance applied. Therefore, the fraud exclusion in plaintiff's policy was invoked and barred plaintiff's claim for no-fault benefits.

Likewise, in light of *Meemic*, the majority declines to address plaintiff's contention that there were genuine issues of material fact regarding whether her claim for no-fault benefits was fraudulent or misrepresentations made for the purpose of defrauding defendant. Despite plaintiff's argument, I would conclude that the trial court properly granted summary disposition on this basis as well.

"[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 729 NW2d 277 (2006). Here, plaintiff testified in her deposition that she suffered from head, back, neck, leg, and shoulder pain as a result of the accident, that required periodic use of a cane which contradicted her prior testimony and other evidence produced in the Harmony case.

To counter this clear and direct evidence in the Harmony case, plaintiff submitted an affidavit in which she denied being paid by Reed, her father, $200 an hour for taking care of him. Additionally, plaintiff averred that although she did perform work for her daughter's party planning business, she was not paid and provided administrative services such as "phone calling, planning, and scheduling only." Regardless of the fact that she was not paid for her services, plaintiff *failed to deny that she performed those services* for her father and her daughter at the same time that she made claims to defendant for PIP benefits for replacement services and attendant care as a result of her injuries and disability. Further, the affidavit failed to deny that plaintiff drove children to school for extra money as set forth in Harmony's testimony. Although plaintiff's affidavit represents that her disability restriction was lifted in November 2018, when she began to care for and provide services to Harmony, documentary evidence was never submitted by plaintiff

---

[7] Plaintiff contends that she was unable to work until November 2018 when restrictions were lifted by her treating physicians. This information was set forth in plaintiff's affidavit. There is no evidence in the lower court record from a medical doctor that plaintiff was released from restrictions. Additionally, at the summary disposition hearing, defense counsel represented that the insurance company was not apprised of any release.

to support that assertion. Moreover, the affidavit failed to explain the services that she provided to Reed between 2015 and 2017 when plaintiff claimed to suffer mobility issues from the accident. Thus, reasonable minds could not differ in light of this clear evidence[8] that plaintiff made fraudulent representations for purposes of recovering PIP benefits and the trial court did not err in granting summary disposition.

I would affirm.

/s/ Kirsten Frank Kelly

---

[8] I reject plaintiff's contention that the trial court improperly assessed the credibility of plaintiff. See *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). Rather, the trial court appropriately reviewed the record evidence and reasonable inferences therefrom to determine if a genuine issue of any material fact existed to warrant a trial. *Id*. Here, *plaintiff's counsel admitted before the trial court that plaintiff lied*. Plaintiff submitted a claim for attendant care and replacement services to defendant. However, in the Harmony case, plaintiff initially denied being a party to any other lawsuit, but eventually admitted that she performed attendant care and replacement services at the same time she represented that she received those services and sought payment from defendant. She only recanted payment for her services to her father, not the submission of a fraudulent proof of loss.